PHILLIPS PETROLEUM CO. et al. v. MANGAN.

No. 29943.     June 17, 1941.

*114 P. 2d 454.*

Don Emery, Rayburn L. Foster, and Ed. Waite Clark, all of Bartlesville, for plaintiffs in error.

Chas. W. Pennel, of Bartlesville, for defendant in error.

RILEY, J. This is an action commenced by defendant in error, hereinafter referred to as plaintiff, against plaintiffs in error, hereinafter referred to as defendants, to recover damages alleged to have been caused by pollution of a stream.

Plaintiff alleges that he was the owner of the E. ½ of the S. E. ¼ of sec. 23, twp. 25 N., R. 12 E., Washington county, and that during the two years next preceding the filing of this action he had under lease the W. ½ of the S. E. ¼ of said section; that he lived upon the land he owned and used said land, together with the leased land, for general farming purposes.

Defendant owned and operated a number of oil and gas wells some distance west of plaintiff's land. The wells produced quantities of salt water and in order to dispose of the salt water defendant constructed and operated a disposal plant wherein the salt water was treated for the purposes of removing certain substances therefrom, and pumped into tanks and thence into wells which no longer produced oil. The plant was located near the banks of a stream known as Keeler creek which flows northeastward and across the land owned and the land leased by plaintiff.

Defendant Otis Ball was the foreman or superintendent of defendant Phillips Oil Company and in charge of the disposal plant.

Plaintiff alleged that during the two years next preceding the filing of the petition defendants released large quantities of salt water into said stream and caused the same to flow onto and through the land and premises of plaintiff, and as a direct result thereof plaintiff sustained damages in that some 60 head of plaintiff's cattle drank the waters, became sick, depreciated in condition and value, to plaintiff's damage in the sum of $600; that the salt water permeated the soil and natural water veins, poisoned the soil, to plaintiff's damage in the sum of $500; that some 50 shade trees along the banks of said stream were killed, further depreciating the value of plaintiff's farm to the extent of $250, and that plaintiff was deprived of the use of the water in said stream for his livestock and other uses on his premises and the premises which he had leased, to his further damage in the sum of $400, a total of $1,750, for which he sought judgment.

In a second cause of action plaintiff sought a permanent injunction enjoining defendants from permitting oil and salt water to escape from said works and flow onto plaintiff's premises.

Defendants, by separate answer, denied generally the allegations of plaintiff's petition and specifically denied that Phillips Petroleum Company or any of its employees, by any act of commission or omission, polluted or contributed to the pollution of said stream, and affirmatively alleged that if said stream, its basin and banks, and the land adjoining same and adjacent thereto were at any of the times alleged in plaintiff's petition saturated with or otherwise polluted by salt water, said condition had existed for the past 15 years, and that the alleged turning of salt water into said stream had in no wise added to the pollution of said stream, and that "this defendant is entitled to discharge into said creek such oil, salt water and other deleterious

and poisonous substances as this defendant may produce from the wells on said premises, or may use in connection with the production of said wells."

Defendants pleaded permanent pollution of the stream, and permanent damage to the land adjacent thereto for more than 15 years and pleaded the 15-year statute of limitations, and also the two-year statute of limitations. Defendants alleged that for more than two years plaintiff had known of the character of the creek and water therein and if same was polluted as alleged in plaintiff's petition, plaintiff had knowledge thereof, and if he permitted his stock to drink from the creek, he thereby contributed to the damage of his stock, and was thereby guilty of contributory negligence.

The issues were tried to a jury, resulting in a verdict and judgment for plaintiff in the sum of $1,000.

After the verdict was returned, the court entered a decree perpetually enjoining defendants and each of them from willfully and deliberately opening the valve of any pipe line or cutting dykes and thereby allowing or permitting salt waters to flow out of their tanks, into the creeks running through plaintiff's land.

Separate motions for new trial were filed as against the verdict of the jury and as to the order granting the permanent injunction, and defendants appeal.

There is no serious contention made in the brief that the injunction was wrongfully granted. There is ample evidence in the record to justify it, and in view of the fact that only willful and deliberate acts are enjoined, the injunction is sustained.

The principal ground relied upon for reversal of judgment of damages is alleged error of the court in its instruction No. 12, going to the amount the jury might award for the damage to plaintiff's land. As heretofore pointed out plaintiff claimed four elements of damage, (1) to his stock, $600, (2) to

his land by injury to the soil itself and pollution of the subsurface water strata, $500, (3) destruction of shade trees, $250, and (4) loss of use of the water in the stream for stock water and other use on the land of plaintiff and on the rented land, $400.

The court by instruction No. 10 properly instructed the jury that any damage on account of destruction of shade trees would be a decrease in the value of the land, and that the measure of damages would be the reasonable market value of the land on May 4, 1937, less the reasonable value thereof May 4, 1939, considering the loss of the trees, if any, as a part of the cause of such depreciation.

The court also instructed the jury that if it should be found that plaintiff suffered any pecuniary loss by reason of being deprived of stock water, such loss would also be included in the difference in value of the land. The court correctly instructed the jury as to the measure of damages to plaintiff's livestock.

Instruction No. 12 told the jury:

"You are further instructed that in case you find for the plaintiff, that as to the damages to the cattle in no event could you find in any sum to exceed $600; and that in the event you should find for the plaintiff for damages as to the land, the amount may not exceed $1,150; and in no event should your return verdict be for a total sum to exceed $1,750."

Defendants contend that this was error in that thereunder the jury could have found damage to plaintiff's land up to $1,150 wherein he claimed but $750 in his petition. This would not be true if the court was correct in the last sentence of instruction No. 10, which reads:

"Further, if you find that the plaintiff suffered pecuniary loss by reason of being deprived of his stock water, such loss would be included in the difference in the value of the land set out in the foregoing paragraph."

Therein was the claim for the $400 which made up the difference between

the $750 claimed for damage to the land itself and the $1,150 set out in instruction No. 12 as maximum damage to the land.

Defendants did not except to that instruction and saw fit to allow that instruction to go to the jury without objection.

Defendants recognize in their brief the harmless error rule, and acknowledge that the $1,000 verdict is well within the sum pleaded for damage to cattle and real estate. We find that the amount of damages proved by plaintiff on the items of land and cattle are well within the verdict.

If plaintiff was entitled to receive anything whatever for damage to his cattle, under the evidence he was entitled to a minimum of $480. That was the lowest amount stated by any witness. The evidence ranged from that figure up to as much as $900.

There was an abundance of evidence of substantial damages as to the cattle, so if the jury followed the evidence and allowed plaintiff no more than the minimum amount of damage to his cattle as stated by any witness, then the jury could not have allowed more than $520 as damage to the land. It is clear from the record as a whole that the error, if any, was harmless.

It is also contended that the court in said instruction No. 12 erroneously and prejudicially told the jury that its verdict could include $500 damages to fresh water veins, when such damage was not supported by the evidence.

There is no merit in this contention. That instruction nowhere limits the jury to a finding of damage to the land as damage to fresh water veins. That was but one element in the evidence. There was evidence of damage and injury to the soil and its production aside from injury to the subterranean water supply.

It is next contended that the court erred in refusing to allow defendants to prove that large quantities of salt water had been dumped into Keeler creek continuously for a period of more than 16 years prior to the time Phillips Petroleum Company took over said premises. Defendant undertook to go back as far as 1918, and show that salt water was then being dumped into said stream. The court rejected such evidence, but did allow defendants to show the condition of the stream as far back as 1932, and from that time down to the date of this action. The issues presented and tried were as to the condition of the stream two years prior to the action, and the subsequent injury and damage. The trial court followed closely the rule stated in Commercial Drilling Co. v. Kennedy, 172 Okla. 475, 45 P. 2d 534. Defendants were allowed to show the condition of the stream prior to May 4, 1937, two years before this action was commenced.

By instruction No. 9 the court plainly told the jury that if they should find from the evidence that that part of Keeler creek running through plaintiff's land on and prior to May 4, 1937, was permanently polluted and the soil permanently saturated with deleterious substances, then plaintiff could not recover.

Since every opportunity was given to defendants to show the condition of the stream, to show if they could that the stream was permanently polluted in a period prior to May 4, 1937, there was no useful purpose in showing a condition alleged to exist in the year 1918.

There being no substantial or prejudicial error, the judgment is affirmed.

WELCH, C. J., CORN, V. C. J., and GIBSON and DAVISON, JJ., concur.