POWELL BRISCOE, Inc. et al.

v.

PETERS et al.

No. 36034.

Supreme Court of Oklahoma.

April 6, 1954.

Rehearing Denied April 27, 1954.

O'NEAL, Justice.

This is an action in which plaintiffs sought a permanent injunction against the defendants restraining them from using an earthen pit, or tank, for the impounding of salt water produced in the operation of certain oil wells upon land under an oil and gas lease owned and operated by the named defendant and two of its employees. From the granting of a permanent injunction, defendants appeal.

It was alleged in plaintiffs' amended petition that they owned the surface rights in 80 acres of land in Seminole County, Oklahoma; that the defendants Powell Briscoe, E. F. Briscoe, R. O. Reynolds and J. C. McKinney are the owners of an oil and gas lease upon plaintiffs' land, upon which the named defendants have drilled three oil wells; that the defendants Joe Collins and Bill Ennis are pumpers and employees of the defendant owners and operators of the lease; that the defendants, in the operation of the properties have constructed an earthen tank, or pond, upon the premises, and that the soil is of a sandy character and the brine in the pit, or tank, will seep into or permeate the surrounding soil and will destroy the vegetation and pollute the fresh water upon plaintiffs' land. It is alleged that the said acts constitute a private nuisance and will prevent plaintiffs from using and enjoying their property.

Defendants, by answer, plead the ownership of certain oil and gas leases upon plaintiffs' land, which leases were executed prior to plaintiffs becoming the owners of the surface rights of the land, and defendants specifically plead the rights so acquired under said leases; they further plead that the leases have been operated with due and reasonable care and in the usual and customary practice prevailing in the Mid-Continent area, as well as that of the Seminole area; they alleged that no damage has been done plaintiffs, and that their claim is a speculative possibility of damages.

The evidence tends to support a finding that the soil on plaintiffs' land, as well as lands in the area thereof, is of a loose sandy loam, and a large number of wells have been drilled and operated in the general area of plaintiffs' land.

Tom W. Garrett, Tom W. Garrett, Jr. Oklahoma City, Hicks Epton, Horsley, Epton & Culp, Wewoka, for plaintiffs in error.

Clem H. Stephenson, Wewoka, for defendants in error.

Plaintiff, as a witness, testified at length with reference to oil production on lands lying to the west of his property. He identified that tract as the Gussie Porter land upon which there were ten producing oil wells. The soil upon that land was described as being perhaps a little more sandy than his land. Photographic exhibits of the Gussie Porter lease were introduced, which reflects the exterior and interior of a salt water pond upon that land. He testified as to the location of a lease south of the Kight school and another lease designated as the Jack Wade farm; that the soil on these lands was of a sandy loam formation; that from the condition of the soil near the salt water pits upon those leases, there was indication that salt water had destroyed the vegetation in the immediate vicinity of the pits. He testified at length as to the methods employed by the Cities Service Company in disposing of their brine by emptying it into Little River, and that many producers in the oil field disposed of brine by emptying it into Little River, or the South Canadian River. With reference to the operation of the three wells on his land he stated that salt water produced upon the lease was conveyed in a pipeline to a pond situated in the southwest corner of his land. He did not testify that any salt water thus produced ever escaped from the pit or flowed over his land.

Plaintiff introduced the testimony of five additional witnesses, some of whom worked as pumpers on leases in the Sasakwa area. Their testimony is to the effect that some operators use intake wells to dispose of brine, some run their brine into Little River, or the South Canadian river, and others impound it in pits or tanks upon their respective leases; they expressed an opinion that salt water in pits in the area involved would seep causing some injury to vegetation near the pits. One witness stated that as defendants' wells were in close proximity to Little River, that no pumping equipment was necessary to dispose of the brine into Little River. Plaintiff's last witness stated that the soil on plaintiff's farm is composed of three layers; the top soil is sandy loam soil; underneath is a soft friable clay, the bottom is stiff hard clay; that the pit on plaintiffs' land is located on the southwest ten acres of the eighty acre tract; that plaintiffs' house and improvements are located on the northwest ten acres of the farm, and upon higher land than the pit. He described the pit as between thirty and forty feet wide, ten to twelve feet deep and containing approximately three to four feet of salt water.

Defendants' testimony discloses that one well upon the land produced some salt water; that plaintiffs' land slopes to the east and north of the salt water pit, which is located on the southwest corner of the farm; that plaintiffs' house and improvements are located in the northwest corner of the land, upon an elevation of approximately fifteen to twenty feet above the pit; that the pit has never been filled with salt water, and that no salt water has escaped therefrom; that one well upon the lease produced approximately four barrels of brine a day; that if oil wells thereafter made enough salt water to fill the pits the owners were willing to dig an additional pit below the present one to catch any salt water that might seep out of the pit; that an intake well for the disposal of salt water would cost the defendants approximately $30,000.

It was stipulated that the defendant owners of the lease were financially able to respond in damages for any injury to plaintiffs' land arising out of their oil operations.

Upon the submission of the case the trial court made a finding as follows:

"The Court further finds that at the time of the hearing herein there were three producing oil wells owned by the defendants located upon the property of the plaintiff, and that in all probability there will be additional wells drilling upon this 80 acre tract of land. The evidence discloses that one well is now producing some salt water. There is the probability that this well will increase its production of salt water and that possibly other wells will produce salt water, and if such is allowed to drain and flow into the tank constructed by the defendants it will constitute

a nuisance which can be abated by the expenditure of money or labor," and upon said finding entered an order and judgment that the temporary restraining order or injunction be made permanent.

The lease contract authorizes the operator for oil and gas development to lay pipelines, build tanks and structures upon the land to produce, save and take care of said products. The oil and gas lease here involved is the ordinary lease employed in the operation of oil and gas wells in the Mid-Continent field.

In Pure Oil Co. v. Gear, 183 Okl. 489, 83 P.2d 389, 390, we held:

"Under the ordinary oil and gas lease, the lessee in developing the premises in the production of oil and gas, is entitled to the possession and use of all that part of the leased premises reasonably necessary in producing and saving the oil and gas, including space to construct tanks and ponds, in which to confine salt water and other waste matter coming from the wells, and also including the space necessary to transport such waste matter from the wells into such tanks or ponds in a reasonably prudent manner."

In the case of Mary Oil & Gas Co. v. Raines, 108 Okl. 222, 235 P. 1085, it is said:

"In an oil and gas lease the lessee is entitled to the possession of the land so leased to the extent reasonably necessary to perform the obligations imposed on him by the terms of the lease, and the annoyances caused by production of oil and gas under a lease providing for the use of the surface for that purpose, in the absence of negligence on the part of the lessee, do not constitute a nuisance, and, where the same is being operated in the ordinary way and all precautions customarily prevailing in the oil and gas industry are being used to protect the rights of the surface owners, the incidental annoyances accompanying same offer no grounds for relief by injunction."

Construing the allegations of plaintiffs' petition and the proof submitted in support thereof in its most favorable light, we are of the view that the evidence wholly fails to sustain plaintiffs' contention that defendants in the operation of the lease by the impounding of salt water in the pit described, have created a private nuisance.

It will be observed that the court based its judgment upon a finding that additional wells may be drilled on the land, and further, that there is a probability that the present well, which is making four barrels of brine will, in the future, increase its salt water production, and that possibly other wells will produce salt water, and that if it is allowed to flow in the pit the salt water will constitute a nuisance. That finding, as its reading indicates, is based upon speculation and conjecture and it is without basis in the record. The salt water pit upon plaintiffs' land was constructed in the manner employed by all other producers in the field who impounded salt water upon their leases. Furthermore, there is no evidence that defendants have permitted any salt water to flow over plaintiffs' land. Concededly, plaintiffs admit no present injury, for no proof was submitted as to present damage.

To sustain the judgment for injunction under the facts here submitted, would result in depriving defendants of a substantial right under their oil and gas lease, and, in effect, deprive them of their property rights without plaintiffs having shown any present injury.

As this court said in its opinion in Tidal Oil Co. v. Pease, 153 Okl. 137, 5 P.2d 389, 392.

"To hold that operators could not flow salt water over the surface of land owned by them or leased by them for that purpose, or to deposit same in pools or tanks on their own land, would in many cases render impossible development for oil and gas in fields where salt water is produced."

The denial of injunctive relief does not deprive plaintiffs of their action at law if and when they establish injury to their land by reason of defendants' operation under its oil and gas lease. Fairfax Oil Co. v. Bolinger, 186 Okl. 20, 97 P.2d 574.

Moreover, the record here discloses that plaintiffs have a plain, speedy and adequate remedy at law for the recovery of damages in the event damages are sustained.

In Harris v. Smiley, 36 Okl. 89, 128 P. 276, we held:

"If it appears from the petition that plaintiff has a plain, speedy, and adequate remedy at law, equity will not grant him relief by injunction."

In Sunray Oil Co. v. Cortez Oil Co., 188 Okl. 690, 112 P.2d 792, we held:

"An injunction will not issue to protect a right not in esse and which may never arise, or to restrain an act which does not give rise to a cause of action."

In the case of Marshall v. Homier, 13 Okl. 264, 74 P. 368, we held:

"Where, in an action for an injunction, the alleged contemplated injury is such that can be fully compensated in money damages, and the defendants are wholly and unquestionably solvent, a temporary injunction should not be granted, and, where granted upon proper motion, should be dissolved, and the plaintiffs left to their adequate remedy for damages."

Plaintiffs rely upon certain Oklahoma cases as follows: Gulf Pipe Line Co. v. Pawnee-Tulsa Petroleum Co., 34 Okl. 775, 127 P. 252, 41 L.R.A.,N.S., 1108; Pulaski Oil Co. v. Conner, 62 Okl. 211, 162 P. 464, L.R.A.1917C, 1190; Phillips Petroleum Co. v. Mangan, 189 Okl. 166, 114 P.2d 454; and Carter Oil Co. v. Kerley, 109 Okl. 69, 234 P. 737.

The Gulf Pipe Line Co. case, supra, holds that the lessee of an oil and gas lease cannot arbitrarily locate a well in a place where it will endanger the property and lives of others when another location is equally advantageous to him.

In the Pulaski Oil Co. case, supra, the action at law was to recover damages arising out of defendants' operation of oil properties in which a default judgment was entered against defendants. The syllabus of the case discloses that the court held that the petition stated a cause of action to sustain the default judgment rendered.

The Phillips Petroleum Co. case, supra, was an action at law for the recovery of damages arising out of the pollution of a stream resulting in injury to plaintiff's land and plaintiff's water supply.

The Carter Oil Co. case, supra, holds that under the provisions of section 7969, Comp. Stat.1921, Title 52 O.S.1951 § 296, it is unlawful to permit oil or salt water to run over the land.

We are of the view that the findings and conclusions of the trial court are not supported by the record. The judgment granting a permanent injunction is reversed. The further contention made involving the question of venue need not be considered.

Judgment reversed.

JOHNSON, V. C. J., and WELCH, CORN, ARNOLD and WILLIAMS, JJ., concur.

BLACKBIRD, J., dissents.