**TENNECO OIL COMPANY, a corporation, and Sac and Fox Prue Sand Unit, Appellants,**

v.

**Clyde ALLEN, Appellee.**

**No. 43382.**

Supreme Court of Oklahoma.

Oct. 30, 1973.

Glenn R. Davis, Boesche, McDermott & Eskridge, Tulsa, for appellants.

James & Butts by Richard James, Stroud, for appellee.

LAVENDER, Justice:

This appeal, by the Sac and Fox Prue Sand Unit (a body politic and corporate organized, and created, under the 1951 statutes now appearing as 52 O.S.1971, §§ 287.1 through 287.15) and Tenneco Oil Company, involves a jury verdict, and judgment based thereon, against them as the defendants in an action by the defendant in error, Clyde Allen, for damages allegedly sustained by him as the owner of certain land included in the unit-area of the Sac and Fox Prue Sand Unit.

By virtue of a deed dated February 27, 1967, the plaintiff became the owner of the Southeast Quarter of Section 15, Township 14 North, Range 6 East, in Lincoln County, Oklahoma, subject to the rights of the lessee under a then-producing oil and gas lease dated May 3, 1935, to Sinclair Prairie Oil Company, as lessee, covering the entire quarter-section.

The Sac and Fox Prue Sand Unit was organized, and created by order of the Corporation Commission of this state under date of May 29, 1952, for the unitized operation (including secondary recovery operations) of the Prue Sand underlying a designated "unit-area" of some 1,200 acres of land in Lincoln County, in accordance with a "plan of unitization" submitted with the application for such order. In July of 1964, Tenneco Oil Company (hereinafter referred to as "Tenneco") had become the designated unit-operator for the unit, and was still the unit-operator at the time of the trial of this case.

Seventy-five acres of the above-described quarter-section had been, and are, included in the unit-area of the Sac and Fox Prue Sand Unit. They consist of the seven square ten-acre tracts abutting the

northern and western boundaries of the quarter-section, plus the triangular northwest half of the Southeast Quarter of the Northwest Quarter of the quarter-section.

Attached to the petition is a copy of a plat of the unit-area and the surrounding area, indicating that it had been prepared by Tenneco Oil Company. It shows that a well had been drilled near the center of each of the seven ten-acre tracts of the plaintiff's land within the unit-area and had been assigned a unit-well number (Nos. 88, 89, 90, 91, 98, 102, and 106, commencing in the southwest corner of the quarter-section and proceeding north and then east), and that a well had been drilled near the center of each of four of the eight remaining square ten-acre tracts of the quarter-section.

Under the above-mentioned lease, the lessor granted, leased and let the described quarter-section of land to the lessee "for the purpose of mining and operating for the producing oil and gas, casinghead gas, casinghead gasoline, laying pipe lines, building tanks, storing oil, building towers, stations, telephone lines and other structures thereon to produce, save, take care of and manufacture all of such substances, and for housing and boarding employees," for a term of five years from May 7, 1935, and as long thereafter as oil, gas, casinghead gas or any of them is produced.

The lease provides that "When required by lessor, the lessee shall bury pipe lines below plow depth and shall pay for damage caused by its operations to growing crops on said land." It also provides that "Lessee shall have the right at any time during or 90 days after the expiration of this lease to remove all machinery, fixtures, houses, buildings and other structures placed on said premises, including the right to draw and remove all casing."

At the time of the trial, some oil was still being produced from wells on that part of the leased premises within the unit-area and on that part of the leased premises not within the unit-area, and the above-mentioned oil and gas lease remained in full force and effect.

At the close of all of the evidence, the court sustained the defendants' motion for a directed verdict as to punitive damages. It will be ignored hereafter.

As we understand it, the plaintiff's first and second causes of action are brought on the theory of private nuisances created or maintained by the defendants. For that reason, we quote the pertinent statutes relating thereto.

The statute now appearing as 50 O.S. 1971, § 1 provides, in part:

"A nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either:

"First. Annoys, injures or endangers the comfort, repose, health, or safety of others; or,

" * * * ; or,

"Fourth. In any way renders other persons insecure in life, or in the use of property."

The statutes now appearing as 50 O.S. 1971 §§ 2 and 3 provide, respectively, that:

"A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon the individuals may be unequal."

"Every nuisance not included in the definition of the last section is private."

The statutes now appearing as 50 O.S. 1971, §§ 5, 6 and 13 provide, respectively, that:

"Every successive owner of property who neglects to abate a continuing nuisance upon, or in the use of such property, created by a former owner, is liable therefor in the same manner as the one who first created it."

"The abatement of a nuisance does not prejudice the right of any person to recover damages for its past existence."

"The remedies against a nuisance are: 1, A civil action; or, 2, Abatement."

■ Ordinarily, where the one liable for a nuisance fails to abate it voluntarily, abatement is accomplished through mandatory injunction.

The plaintiff pleaded the basic situation outlined above and alleged that, insofar as actual operations on his land within the unit-area are concerned, the Sac and Fox Prue Sand Unit is the lessee in the above-mentioned oil and gas lease, and Tenneco Oil Company is the agent of the unit with respect to the matters complained of by him; and that, when he purchased the quarter-section of land, he succeeded to all of the rights and benefits of the lessor under the lease.

As the basis for his first cause of action, the plaintiff pleaded that, under the lease, the lessee has the right to occupy and use so much, but only so much, of the surface of the leased land as is reasonably necessary to produce and save oil and gas from the leased land.

On the theory that such matters deprived him of the use of portions of the surface of his land within the unit-area not reasonably necessary for the operation of the lease (temporarily in some instances and permanently in others) and amounted to the lessee's use of more of the surface than reasonably necessary for the purposes of the lease, the plaintiff alleged a number of instances, within one year preceding the commencement of the action, in which oil or salt water, or both, escaped from the unit's wells, salt water pits, or pipelines and spread over portions of his land within the unit-area and not reasonably necessary for the purposes of the lease, with some of such substances flowing into ponds on his land within the unit-area in which his cattle watered, causing temporary or permanent injury to the land. He alleged that his damages therefrom amounted to $4,000.00.

And, on the theory that the defendants' continuing to occupy certain portions of the surface of his land within the unit-area long after the reasonable necessity for doing so prevented him from using por-

tions of the surface and amounted to the defendants' using that much more of the surface than reasonably necessary for the purpose of the lease, the plaintiff also alleged, in his first cause of action, that the drilling of the seven unit-wells on his land had been completed years ago, so that the reasonable necessity for the pits dug and constructed in connection with the drilling of the wells had terminated years ago, but the defendants have failed to fill any of those pits; that unit-wells Nos. 89, 91, 98 and 102 on his land within the unit-area were abandoned years ago but the defendants have failed to remove all of the old equipment, and remove or bury all of the concrete foundations and guy-wire "dead men," that had been used in connection with those wells while they were being used in the drilling for, and production of, oil or gas under the lease, and to level off the sites; that the defendants had removed the rod lines that had been connected to some of the wells on his land within the unit-area but left the concrete rod-supports sticking out of the ground or on the surface of the land, making it impossible for the plaintiff to use portions of his land most effectively for agricultural and grazing purposes. He alleged that such acts on the part of the defendants constitute a private nuisance to him, which can be abated; that he is entitled to the reasonable cost of abating the same so that the defendants will not be using more of the surface of the land than reasonably necessary for the purpose of the lease; and that the reasonable cost of the necessary clean-up operations is $3,000.00

On his first cause of action, the plaintiff prayed for judgment in the amount of $7,000.00.

In his second cause of action, plaintiff alleged that the old pipelines used in the unit's operations on his land, and a new pipeline constructed by the defendants for that purpose, were laid on the surface of the ground; that the pipes made it extremely inconvenient for him to mow or plant grass for use in his cattle operations; that he requested the defendants to bury

all of their pipelines below plow depth, as provided for in the lease, but they failed and refused to do so. He also alleged, in his second cause of action, that, when he purchased the land, the defendants, in connection with their operations, were entering the land from the west, at a point near the northwest corner of the quarter-section and at a point near the southwest corner of the quarter-section; that he requested them to keep the gates at those points closed but, instead of doing so, they removed the gates, constructed cattleguards across the roadway, about 25 feet west of his west boundary line, and connected the fence to the sides of the cattleguards, leaving an area at each point where his cattle could trespass upon the adjoining land to the west; that, as a result thereof, it was necessary for him to check both places every day for about 45 days, to see that his cattle were not trespassing on the other land, before he could prevail upon the defendants to close and lock the gates he had installed in the regular fence-line in the meantime. He alleged that such acts on the part of the defendants constituted private nuisances, and prayed for damages in the amount of $2,000.00 on his second cause of action.

The defendants demurred specially to those portions of the first cause of action which related to their failure to clean up portions of the surface of the land, on the ground that they had no duty to do so, and also demurred to each cause of action on the ground of failure to allege facts sufficient to constitute a cause of action in favor of the plaintiff and against the defendants. Those demurrers were overruled by the trial court.

In their answer, the defendants denied generally all of the allegations in the petition, and, except for alleging that the area involved in plaintiff's allegations of pollution was subject to frequent flooding by waters from a nearby stream and that any damage to that area was the result of such flooding, pleaded no new matter. Plaintiff's reply consisted of a general denial of any new matter pleaded in the answer.

At the close of the plaintiff's case in chief, the defendants entered a general demurrer to the evidence relating to each cause of action. Those demurrers were overruled, and the defendants presented their evidence. When the plaintiff rested his case in rebuttal, the defendants moved for a directed verdict on each cause of action. The court overruled the motions as to the first and second causes of action.

The jury returned a verdict in favor of the plaintiff, in the amount of $5,150.00 on the first cause of action and in the amount of $1,000.00 on the second cause of action. Judgment was rendered accordingly.

After the overruling of their motion for a new trial, the defendants appealed to this court on the original record and a transcript of the proceedings at the trial.

The defendants present their argument under two general propositions. The first one relates only to the first cause of action.

■ Their general proposition concerning the first cause of action is that they were, and are, under no duty or obligation to restore the premises as to which the plaintiff sought to recover the cost of clean-up operations. Based thereon, they argue:

(A) That the court erred in overruling their special demurrer to those portions of the petition concerning their failure to restore the premises;

(B) That the court erred in admitting evidence, over their objections, concerning the reasonable cost of restoring the premises;

(C) That the court erred in overruling their demurrer to the plaintiff's evidence, and in denying their motion for a directed verdict, on the first cause of action;

(D) That the court erred in refusing to give their requested instruction numbered 3; and

(E) That the jury's verdict on the first cause of action, in the amount of $5,150 (which is $1,150 more than the plaintiff prayed for as damages for temporary and permanent injuries to his land as the result of escaping oil and salt water) is excessive and erroneous in that it obviously includes some amount as the cost of restoring the premises, and it is impossible to separate the recoverable portion from that which cannot be recovered.

The defendants' theory concerning those portions of the first cause of action which did not involve injuries to the land from escaped oil and salt water is set forth in their requested instruction numbered 3:

"You are instructed that there is no duty or obligation on the part of the defendants to fill and level any pits, remove any cement blocks or other structures not dug or constructed by defendants or used by defendants in its operations of the oil and gas wells; and the fact that such pits, cement blocks or other structures may have been placed on the land by others and may have caused damage to the land imposes no obligation on defendants to remove same or to restore the premises for the benefit of plaintiff."

The principles of law relied upon by the defendants in support of that theory and their general proposition—as set forth and applied in the cases cited by them, to wit, Fox et al. v. Cities Service Oil Company (1948), 201 Okl. 17, 200 P.2d 398; Duvanel v. Sinclair Refining Company (1951), 170 Kan. 483, 227 P.2d 88; Decker v. Jones (1965), 194 Kan. 146, 398 P.2d 325, and Warren Petroleum Corporation v. Monzingo et al. (1957), 157 Tex. 479, 304 S.W.2d 362—related only to the obligations, if any, of a lessee with respect to the surface of the leased land at the termination of the lease.

In the present case, the lease was in full force and effect at all times involved therein. As pleaded, and tried, upon behalf of the plaintiff, his first cause of action involves the rights of the lessor, and of the lessee, under an oil and gas lease, with respect to the surface of the land covered by the lease, while the lease remains in force and effect. The principles of law stated in the above-cited cases have no application herein.

Insofar as the surface of the land is concerned, the basic rule as to the rights of the lessor and lessee in an oil and gas lease is set forth in the first paragraph of the syllabus to Schlegel et al. v. Kinzie (1932), 158 Okl. 93, 12 P.2d 223, as follows:

"The right of possession of the leased premises under an oil and gas mining lease is concurrent in the lessor and lessee; the lessee being entitled to enter upon the premises and to use so much thereof as is reasonably necessary for the development thereof for oil and gas under the terms of the lease and for the successful operation thereof, and the lessor being entitled to the possession of the land for all other purposes."

In the body of that opinion, this court quoted the following from the fourth paragraph of the syllabus to Pulaski Oil Company v. Conner (1916), 62 Okl. 211, 162 P. 464:

"In the absence of contrary expression in the lease, a lessee in an oil and gas lease has only such rights to the surface of the leased land as may be necessarily incident to the exercise of his rights under the lease, and must protect the surface rights [of the lessor] in so far as such incident necessity does not exist."

On the basis of those rules, this court, in the Schlegel case, affirmed the judgment of the trial court granting a mandatory injunction to compel the lessee to fill the slush-pit that had been used in connection with the drilling of a producing well, and to remove certain equipment from the premises, all of which the court found was no longer reasonably necessary for, or being used, in the performance of the lessee's oligations under the lease.

In Lanahan v. Myers et ux. (1964), Okl., 389 P.2d 92, this court held, in effect, that

the lessee's depriving the lessor of the use of portions of the leased land which were no longer reasonably necessary for the performance of the lessee's obligations under the oil and gas lease involved by continuing to occupy those portions of the surface of the leased land with slush-pits that had been used in connection with the drilling of wells but which were no longer reasonably necessary for, or used in, the performance of those obligations under the lease, constituted the use of that much of the surface which was not reasonably necessary. This court affirmed a judgment for the lessors (based on a jury verdict) on their first cause of action for damages caused by oil and salt water escaping from the lessee's installations on the leased land and flowing over portions of the surface which were not reasonably necessary for, or being used in, the performance of the lessee's obligations under the lease, and for the lessee's maintaining, for an unreasonable length of time after the drilling of the wells had been completed, slush-pits used in connection with the drilling of the wells but which had ceased to be reasonably necessary for, and were not being used in, the performance of the lessee's obligations.

In Davon Oil Company v. Steele et al. (1940), 186 Okl. 380, 98 P.2d 618, this court said that the extent to which use of the surface of the leased land by the lessee was reasonably necessary for the performance of the obligations of the lessee under an oil and gas lease is a question of fact for the jury. And, in Lanahan v. Myers et ux., supra, this court, citing that case, said that whether the lessee has used portions of the surface for a longer period of time than reasonably necessary for the performance of the lessee's obligations under the lease is a question of fact for the jury.

See also Sunray D–X Oil Company v. Brown (1970), Okl., 477 P.2d 67, wherein this court held that damages resulting from an oil and gas operation can be recovered in an action brought on a nuisance theory.

■ There was evidence here which would reasonably support a finding for the plaintiff on substantially every allegation of fact contained in his first cause of action. Concerning the amount of damages to the plaintiff's land from escaping oil and salt water, three qualified witnesses for the plaintiff testified that, in their opinion, the reasonable market value of the plaintiff's land was, respectively, $2,500.00, $3,500.00, and $4,000.00, less immediately after the escaping oil and salt water ran over the various portions of the land within the unit-area than immediately before those occurrences. One of two qualified witnesses for the plaintiff who had inspected the areas involved in the other portion of the first cause of action, testified that the cost of the necessary clean-up work would be $3,064.00. The other one testified that the cost of the necessary clean-up work would be $3,500.00.

We fail to see how the defendants could have been prejudiced by the plaintiff's failure to offer any evidence concerning the amount, in terms of money, of additional damages resulted from temporary injuries to the land from escaping oil and salt water.

■ None of the defendants' attacks upon the first cause of action can be sustained.

The defendants' second general proposition involves the evidence concerning the matter of gates and cattleguards and the defendants' failure to comply with the plaintiff's request that they bury all pipelines on his property within the unit-area below plow depth, alleged in the second cause of action.

The alleged error, as we understand it, is that the trial court erred in overruling the defendants' demurrer to the plaintiff's evidence, and in denying the defendants' motion for a directed verdict, on the second cause of action—first, because there was not sufficient evidence to establish the maintenance of a private nuisance as that term is defined by law, and second, because the plaintiff offered no evidence as to the amount, in terms of money, of damages sustained by the plaintiff.

We find no fault with the general principles concerning what is, and what is not, a nuisance, as quoted by the defendants from the discussion of "Nuisances" in Volume 39 of American Jurisprudence.

As a proper application of those principles where, as in the present case, there is no allegation of actual or threatened injury to the plaintiff's land, or reduction in the reasonable market value or rental value of the land, the defendants rely upon the rule stated in the syllabus to Mary Oil & Gas Company et al. v. Raines et al. (1925), 108 Okl. 222, 235 P. 1085.

In that case, the plaintiffs were owners of homes within a platted but unincorporated area which was, at the time of their purchases, subject to a reservation of the oil, gas and other minerals and an oil and gas lease upon which several producing oil wells had been completed. No wells, however, had been completed on their lots. Nevertheless the plaintiffs sought an injunction to prevent the lessee from constructing, drilling and operating any and all wells on any of the lots within the platted and leased area, on the ground that the drilling and operation of such wells interfered with the peaceable occupation of their homes. They did not show anything out of the ordinary in the lessee's operations under the lease. In the light of the facts involved, the real holding in that case is contained in the following statement in the body of the opinion, at page 1086 of the Pacific report:

> " * * * the prospecting for, drilling, and production of oil and gas, in the absence of negligence by lessees or their assigns, does not constitute a nuisance, and, [in that situation] the incidental annoyances accompanying such development, production, and operation will not constitute grounds for an injunction."

Compare, however, Sunray D–X Oil Company v. Brown, supra.

We cannot say that the annoyances complained of in the plaintiff's second cause of action were necessary incidents to, or naturally resulted from, the performance of the lessee's obligations under the lease. The Mary Oil and Gas Company case does not support the defendants' contention herein.

■ There was evidence which, if believed, would reasonably support the plaintiff's allegations of fact in his second cause of action.

■ In a case triable by a jury, the existence of a nuisance is a question of fact for the jury. See: Goodall et al. v. City of Clinton et al. (1945), 196 Okl. 10, 161 P.2d 1011.

■ The court submitted that question to the jury under instructions (which included the above-quoted portion of the statute now appearing as 50 O.S.1971, § 1) to which the defendants did not except. In connection therewith, the court also instructed the jurors that, in such cases, no precise rule for the ascertainment of damages can be given, because such is not subject to exact measurement in money, and that it is for them to determine, from all the facts and circumstances existing in the case, the amount of money which will reasonably and fairly compensate the plaintiff for such personal inconvenience and annoyance, but not to exceed the sum of $2,000.00 sued for in the second cause of action. The defendants did not except to that instruction.

That instruction is in harmony with the principles of law stated in Oklahoma City v. Eylar (1936), 177 Okl. 616, 61 P.2d 649, and adhered to in Phillips Petroleum Company v. Ruble (1942), 191 Okl. 37, 126 P.2d 526, where injuries to land are not involved.

The defendants' contentions concerning the second cause of action cannot be sustained.

Judgment affirmed.

DAVISON, C. J., WILLIAMS, V. C. J., and HODGES, BARNES, SIMMS, and DOOLIN, JJ., concur.

IRWIN and BERRY, JJ., dissent.