184 A.2d 28 (1962)
Francis STEMERMAN, Plaintiff,
v.
Emory G. ACKERMAN, J. Erik Jonsson, Fred J. Agnich, Eugene McDermott, Lloyd V. Berkner, Ewen C. Macveagh, Cecil H. Green, Mark Shepherd, Jr., Patrick E. Haggerty, Carl J. Thomsen, and Texas Instruments Incorporated, Defendants.
Court of Chancery of Delaware, New Castle.
August 8, 1962.
Irving Morris and Joseph A. Rosenthal, of Cohen & Morris, Wilmington, for plaintiff.
H. Albert Young, of Morford, Young & Conaway, Wilmington, Del., for Texas Instruments Incorporated.
Edmund N. Carpenter, II, of Richards, Layton & Finger, Wilmington, for individual defendants. Ralph M. Carson, Henry L. King and Thomas P. Griesa, of Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, of counsel.
SHORT, Vice Chancellor.
This is a stockholder's derivative action in which plaintiff challenges the validity of certain stock options granted to defendants Shepherd and Haggerty, officers and employees of the corporate defendant, Texas Instruments Incorporated. The ground of the attack is that the options were granted in violation of the corporation's Stock Option Plan.
Plaintiff is the owner of 15 shares of common stock of Texas Instruments. The individual defendants are the members of the board of directors of Texas Instruments, Shepherd, its Executive Vice-President, and Agnich, a former member of the board.
Texas Instruments is principally engaged in the manufacture and sale of electronic components, instruments and equipment. It also produces and sells other specialities.
The Stock Option Plan here involved was adopted by the board of directors of Texas Instruments on January 22, 1957, and approved by more than a ninety-eight per *29 cent majority of stockholders on April 17, 1957. As adopted the Plan authorized the issuance of not more than 150,000 shares. In 1960 the number of shares authorized to be issued under the Plan was increased to 350,000. This amendment was approved by the stockholders.
Paragraph 1 of the Plan states its purpose to be "to provide an added incentive to the officers, executives and other key employees of the Corporation and its subsidiaries, to induce them to remain with the Corporation and its subsidiaries, to attract able persons to enter the employ of the Corporation and its subsidiaries, and to promote the future growth, development and continued financial success of the Corporation and its subsidiaries. The Corporation believes that it is desirable for officers and employees to have a proprietary interest in it and that the Corporation and its stockholders will benefit by this Plan under which such officers and employees are enabled to purchase stock of the Corporation. The Plan is intended to encourage such executives and employees to acquire a permanent interest in the welfare of the Corporation through the ownership of its stock and is not intended to furnish additional compensation to such executives and employees."
Paragraph 3 of the Plan provides for the appointment by the board of directors of a Stock Option Committee to administer the Plan and to make recommendations to the board of action to be taken thereunder. The Committee is to consist of members of the board and no member of the Committee is eligible to receive any option under the Plan. This paragraph also provides that the Committee shall make recommendations to the board as to the officers, executives and other key employees to whom options to purchase stock of the corporation should be granted, the number of shares that should be optioned to each, and the terms and conditions incident to the grant. It also provides: "Subject to the express provisions of the Plan, the Committee shall have the authority to interpret the Plan, to prescribe, amend and rescind rules and regulations relating to it and to make all other determinations necessary or advisable for the administration of the Plan. The Committee's interpretation and construction of any provisions of the Plan shall be final and conclusive unless otherwise determined by the Board of Directors."
Paragraph 4 provides the terms of eligibility and participation in the Plan. It also provides: "The granting of an option to an employee in any one year will not prevent the granting of an option or options to him in any subsequent year or years."
Paragraph 7 provides limitations with respect to the exercise of options granted.
Paragraph 11 provides that options may be granted under the Plan "at any time" and "from time to time" after its effective date.
Paragraph 14 provides: "Each employee receiving an option shall agree to remain in the employment of the Corporation or one of its majority owned subsidiaries at the pleasure of the Corporation or such subsidiary for a period of at least two years from the date of the granting of such option. In the event the services of an employee receiving an option are terminated within two years after the date such option was granted, the said option shall be null and void and of no effect."
On June 20, 1957, the board granted an option to defendant Haggerty to purchase 7,500 shares at the price of $28.50 per share. On June 25, 1958, the board granted an option to Haggerty to purchase 2,500 shares at the price of $37.75 per share. On December 18, 1958, the board granted to Haggerty an option to purchase 10,000 shares at the price of $69.125 per share. In the grant of each of these options the board was acting on a recommendation of the Committee.
On June 20, 1957, the board granted an option to Shepherd to purchase 5,000 shares at the price of $28.50 per share. On December *30 18, 1958, the board granted an option to Shepherd to purchase 5,000 shares at the price of $69.125 per share. On June 25, 1959 the board granted an option to Shepherd to purchase 2,500 shares at $137.50 per share. On December 22, 1959, the board granted to Shepherd an option to purchase 2,500 shares at the price of $168.25 per share. The grant of each of these options was pursuant to a recommendation of the Committee.
Though the complaint charges violations of the Plan in several respects the issues for determination have now been reduced to two, namely:
1. Does the Plan require an employee who has been granted a stock option to enter into an employment commitment to remain in the employment of the company for at least two years in addition to an existing commitment under a previous stock option grant?
2. Does the Plan prohibit the grant of more than one option to an employee in any one year?
Texas Instruments is a company which has achieved phenomenal growth in the space of but a few years. This is a matter of common knowledge. Its progress since the adoption of the Stock Option Plan is particularly impressive. The key personnel of the company are regarded by its management as principally responsible for this progress. Mr. J. Erik Jonsson, chairman of the board of Texas Instruments, its largest stockholder, and an associate of the corporation and it predecessor since 1930 attributes its recent growth, in large measure, to the efforts and ability of Haggerty and Shepherd. In fact, according to Jonsson, Haggerty has been his "back-up man" and is in line to succeed him as chief corporate executive, and Shepherd is the "likely candidate" to succeed Haggerty. It was to attract high level talent and to retain in the company's employment key personnel such as Haggerty and Shepherd that the Stock Option Plan was adopted.
At this stage of the case plaintiff does not charge any fraud incident to either the adoption of the Plan or the granting of options thereunder. Neither does he assert that the board of directors which adopted the Plan was interested. In fact, it is apparent from the record that at the time of the approval of the Plan in 1957 the board of directors of eight members was a completely disinterested board. Ultimately three members thereof did receive grants of options under the Plan. In 1958 the board was increased to nine members and has been constituted of such number since that time. Plaintiff does not challenge the validity of the grant of options to Haggerty and Shepherd on June 20, 1957. His complaint relates to the subsequent grants under the terms of which Haggerty and Shepherd were required to enter into employment agreements for a period of two years only from the date of each grant. Plaintiff says that the Plan contemplated that for each option granted a two year employment commitment should be tacked on to prior employment commitments. He argues that where, as here, the grant of a subsequent option does not require an employment commitment for two years in addition to any commitment under a previous grant the corporation does not receive the benefit which it expects to receive as consideration for the grant.
Whatever uncertainty may have existed in the law with respect to the principles applicable to the validity of stock option plans or the grant of options thereunder has been set to rest by the Supreme Court of this state in Beard v. Elster, Del.Ch., 160 A.2d 731. In the Beard case options granted under the Stock Option Plan of American Airlines were held valid even though the Plan did not require the optionee to make any agreement to remain in the company's employ, and even though, under the Plan options granted could be exercised at any time after the date of the grant. The only condition with respect to employment was that an option could only be exercised while the optionee was still employed by the *31 company. Even in these circumstances the court held that it would not presume to substitute its judgment for that of the disinterested board. The court said:
"We have before us a plan which, in the judgment of a disinterested Board, is adequately designed to further the corporate purpose of securing the retention of key employees' services. It is theoretically possible, we suppose, that some businessmen could be found who would hold the opinion that options exercisable at once were improvidently granted, but, on the other hand, there are businessmen who would hold a favorable view, as this Board of independent businessmen in fact did. At most, therefore, we find ourselves in the twilight zone where reasonable businessmen, fully informed, might differ. We think, therefore, we are precluded from substituting our uninformed opinion for that of experienced business managers of a corporation who have no personal interest in the outcome, and whose sole interest is the furtherance of the corporate enterprise."
In arriving at this conclusion the Supreme Court pointed out certain factors which it considered to be of prime importance. Among these was the fact that the determination by the board that the adoption of the Plan would be for the benefit of the corporation and would result in the retention of the services of valued employees was an exercise of independent business judgment; that the board later reviewed and considered the benefits received and to be received by the corporation from the Plan and reaffirmed its decision with respect thereto; that the judgment of the directors was vindicated since the great majority of the employees who were granted options had remained in the company's employ. The cited factors are also present in the instant case. The determination was that of a disinterested board. The notice of annual meeting of stockholders which was held April 20, 1960, reaffirms the belief of the board that the Stock Option Plan was accomplishing its purposes of (a) providing additional incentive to key employees by affording them an opportunity to increase their proprietary interest in the corporation through the ownership of stock, (b) promoting greater productivity, and (c) furthering the best interest of the corporation through acquisition and retention of the services of key employees. The executives whose stock options are here in question have remained in the company's employ and, from all appearances, intend to so remain.
The testimony discloses that neither the stock option committee nor the board of directors of Texas Instruments considered the requirement of tacking, as suggested by plaintiff, as in aid of the Plan. Defendant Ackerman, a member of the board and of the stock option committee, and a management consultant of long experience testified that in his opinion the tacking of employment commitments would be harmful rather than beneficial to the corporation on the theory that it would be "unsatisfactory * * * to keep an employee who doesn't want to stay with the organization."
Plaintiff argues that the Plan contemplates the corporation receiving certain general benefits from the granting of stock options. He admits that the corporation did receive such benefits through the incentive created by the increased proprietary interest which was made available to the optionees. He contends, however, that the Plan was also designed to accord specific benefits to the company, particularly as is set forth in paragraph 1 of the Plan, to induce key employees to remain with the corporation. It is this purpose of the Plan which plaintiff says has been violated by the grant of the options in question. But the general and specific purposes referred to by plaintiff are, for present purposes, so interrelated as to be incapable of separate consideration. So, the very admission that the general benefits referred to have accrued to the company necessarily, in my *32 opinion, carries with it a concession that the inducement to remain with the corporation has also accrued. The language of the Plan itself indicates that the board of directors considered the acquisition of a proprietary interest by officers and employees as the primary inducement to continued employment.
It is to be observed that nowhere in the Plan is there an express provision for the tacking of employment commitments. On the contrary paragraph 14 expressly requires an optionee to enter into an employment commitment for a period of at least two years from the date of the granting of such option. It is thus apparent that tacking was not only not contemplated by the Plan but that its requirement could well be regarded as a violation thereof.
The gravamen of plaintiff's complaint is upon the shopworn theory that options granted under Plans like that here involved are not supported by sufficient consideration. This theory has been rejected by the Supreme Court in Beard v. Elster, supra. It was also rejected in Kaufman v. Shoenberg, 33 Del.Ch. 211, 91 A.2d 786, where, as here, the option plan required the optionee to agree to remain in the service of the corporation for a period of two years from the date of the granting of an option. The Chancellor made the following pertinent remarks:
"* * * Such options are undoubtedly very attractive. It is not for this court to say that they do not add to job satisfaction and induce added effort on behalf of the recipients with a consequent additional benefit to the Corporation. The long range effect cannot be minimized. These factors are particularly important to the welfare of a corporation such as is here involved.
"While such factors, standing alone, were not determined to be legal consideration by our Supreme Court I think there can be no doubt that they constitute the real consideration sought by the Corporation in return for such options. The so-called legal consideration evidenced by a promise to continue in the defendant's employment for at least two years is merely some assurance that the Corporation may receive that which it expects."
The principle of tacking was also asserted in the Kaufman case. It appeared that an employment commitment of one of the optionees overlapped a previous contract so that the commitments taken together required the optionee to remain in the employ of the company for a total period of three and a half years rather than for four years if tacking was required. The Chancellor held that the commitment covering a period for a year and a half beyond the previous contract was legal consideration for the grant of the second option. Here, the overlapping of commitments is greater as to both number and time. The difference is one of degree. Moreover, plaintiff does not question the determination of the committee and the board as being in good faith. Neither does he challenge the authority of the committee to interpret the Plan, except that he says that any change in its provisions should have been accomplished by an amendment and not by interpretation. It is clear that the Plan has accomplished the purposes for which it was designed. Not only is this the opinion of the board of directors, but the results speak for themselves. With respect to benefit received by the corporation from any stock option plan the value problem is one that is difficult of solution. As the Chancellor said in Kaufman: "With so difficult a value problem it is apparent that the court should only `second guess' the corporate determination if it be shocking in the light of the total picture presented."
Since the Plan does not require the tacking of employment commitments (the contrary is indicated), and, in any event, in the light of the total picture presented the corporate determination may not be said *33 to be shocking, the stock options under attack are not invalid because of the failure to require tacking.
Plaintiff contends that the express terms of the Plan preclude the grant of more than one stock option in any twelve month period to the same employee. Therefore, says plaintiff, the option granted to Haggerty on December 18, 1958, and the options granted to Shepherd on June 25, 1959 and December 22, 1959, are invalid. Plaintiff seizes upon the last sentence of paragraph 4 of the Plan for the conclusion that no more than one stock option could be granted to any one employee in any one year. This sentence provides: "The granting of an option to an employee in any one year will not prevent the granting of an option or options to him in any subsequent year or years." Plaintiff says that the quoted language expressly precludes the grant of more than one option. It is difficult to follow plaintiff's interpretation of this sentence. It is certainly not an express prohibition against the grant of more than one option to an employee in any one year. If it is a prohibition at all, it is one by inference. But assuming the inference necessary to provide a basis for plaintiff's contention, it is in conflict with that portion of paragraph 11 of the Plan which provides that options may be granted thereunder at any time and from time to time after its effective date. This is so whether the language of paragraph 11 is an express authorization for the grant of more than one option in any one year or is but an inference to be drawn therefrom. If the provision of paragraph 11 is an express authorization, then it cannot be contradicted by an application raised from other language of the instrument. Crete Mills v. Smith Baking Co., 136 Neb. 448, 286 N.W. 333; Smith v. Sparks Milling Co., 219 Ind. 576, 39 N.E.2d 125; Duvanel v. Sinclair Refining Co., 170 Kan. 483, 227 P.2d 88, 23 A.L.R.2d 649; Aetna Life Insurance Co., of Hartford, Conn., v. Bidwell, 192 Tenn. 627, 241 S.W. 2d 595; Sabl v. Laenderbank Wien Aktiengesellschaft, Sup., 30 N.Y.S.2d 608 (opinion supplemented, 33 N.Y.S. 764); Crawford v. Thomas, Tex.Civ.App., 229 S.W.2d 80; Tanner v. Title Insurance & Trust Co., 20 Cal.2d 814, 129 P.2d 383; Sandy Hites Co. v. State Highway Commission, 347 Mo. 954, 149 S.W.2d 828. If, on the other hand, the language of paragraph 11 is to be regarded as merely raising an inference of authority to grant more than one option in any one year, then the conflict of inferences so to be drawn must be reconciled, if possible. For this purpose it is necessary to consider the entire instrument and the surrounding circumstances. 17 C.J.S. Contracts § 309, p. 726.
I think it plain from the language of the Plan itself that it was not intended to limit the stock option committee and the board of directors to the grant of a single option per year to any one employee. The intent of the Plan as expressed in paragraph 1 thereof could be frustrated in the event of any such limitation, for it might well develop that at a given time, in any year during which an option had been granted, a key employee might have been offered sufficient inducement by a competing enterprise to move him to withdraw his services from the corporation. The limitation suggested by plaintiff would not, in such event, be in furtherance of the intent of the Plan. Moreover, authority to interpret the Plan was expressly vested in the committee, subject only to the "express provisions of the Plan." Assuming the propriety of the inference to be raised by the language of paragraph 4, the committee was at liberty to disregard it in favor of the inference to be drawn from paragraph 11. With respect to the options under attack it is evident that the committee did place its stamp of approval upon the latter. Furthermore, the circumstances surrounding the adoption of the Plan militate against the inference raised by plaintiff. The business of Texas Instruments was a highly specialized and competitive business. There was a dearth of executive material in the electronics field, and experience had proven that key personnel of some business enterprises in the *34 industry had been enticed away from their employment by competitors. The grantees of the options here under attack were high in the echelon of key employees. In fact, it was they who were primarily responsible for the fantastic success of the corporation. To guard against the loss of such personnel was the primary purpose of the adoption of the Plan and, undoubtedly, the reason for its flexible terms. The surrounding circumstances, therefore, as well as the provisions of the Plan itself clearly indicate that it was not intended to limit the board to the grant of a single option to any one employee in any one year. In such circumstances the inference suggested by plaintiff is not only contrary to the purpose of the Plan itself, but to the intent of the corporation and its stockholders in adopting the Plan. It must, therefore, be rejected, for an inference which negatives the intent of the scheme dealt with by an instrument as a whole may not be allowed to control the interpretation thereof. Compare, Duke Power Co. v. Greenwood County, D.C., 19 F.Supp. 932, affirmed 4 Cir., 91 F.2d 665, affirmed 302 U.S. 485, 58 S.Ct. 306, 82 L. Ed. 381.
I find no merit in plaintiff's challenge to the validity of the options in question. Accordingly, judgment is entered for defendants. Order on notice.