No. 38,126

A. Duvanel, *Appellant*, v. Sinclair Refining Company, A Corporation, *Appellee.*

(227 P. 2d 88)

Opinion filed January 27, 1951.

*J. Morris Moon, Jr.* and *George J. Benson,* both of El Dorado, argued the cause, and *R. A. Cox,* of Augusta, and *George S. Benson* and *Page W. Benson,* both of El Dorado, were with them on the briefs for the appellant.

*Harold Medill,* of Independence, argued the cause, and *W. H. McBrayer,* of Independence, was with him on the briefs for the appellee.

The opinion of the court was delivered by

Price, J.: This is an appeal from an order sustaining a demurrer to an amended petition in an action brought to recover damages for failure of defendant lessee to restore certain real property owned by plaintiff to its original condition when possession of it was surrendered by defendant, after it had been used as a tank and pump station site under a written lease authorizing the property to be used for that purpose.

The basic question is whether, under the terms of the lease contract, such duty to restore was incumbent upon defendant company.

On January 1, 1916, the respective predecessors in interest of plaintiff and defendant entered into the following written contract:

"CONTRACT

"AGREEMENT, Made and entered into the 1st day of January A. D. 1916 by and between Charles W. Brown of Daytona, Florida, party of the first part, hereinafter designated as the lessor, and The Prairie Oil & Gas Company, a Kansas corporation, party of the second part, hereinafter designated lessee:

"Witnesseth, That the said lessor, for and in consideration of the sum of One Dollar to him in hand well and truly paid by the said lessee, the receipt of which is hereby acknowledged, and of the covenants and agreements here-inafter contained on the part of the lessee to be paid, kept and performed, has granted, demised, leased and let and by these premises does grant, demise, leaase (sic) and let unto the said lesse (sic), its successors or assigns, for the purpose of building tanks, powers, stations, pipe lines and structures thereon, and the use thereof, all of a certain tract of land situated in the County of Butler, State of Kansas, described as follows, to-wit:

(Description omitted.)

"It is understood and agreed by and between the parties hereto that the lessor reserves all oil and gas or other mineral rights in and upon the land above described and grants to the lessee the exclusive use of the surface of said land for the purposes indicated herein, except the use of such surface as may be necessary to drill for or otherwise operate for oil and gas or other minerals.

"It is agreed that this lease shall remain in force for a term of twenty (20) years from this date, provided, however, that the lessee for an additional con-sideration of One Dollar, to be paid to the lessor, upon (30) days notice to the lessor, at the end of any rental year, shall have the right to surrender, cancel, or terminate this contract, except as hereinafter stated. Should the lessee exercise the right to surrender, cancel or terminate this lease, before this contract has been in effect and rental paid for ten years, then, and in that event there shall be paid to the lessor the sum equal to two years rent in advance, or One Thousand Dollars ($1000) provided, this surrender clause and the option therein reserved to the lessee shall cease and become absolutely inoperative immediately and concurrently with the institution of any suit in any court of law or equity by the lessee to enforce this lease, or any of its terms, or to recover possession of the leased land, or any part thereof, against or from the lessor, his heirs, executors, administrators, successors or assigns, or any person or persons.

"In consideration of the premises the said lessee covenants and agrees; To pay the lessor, his heirs, executors, administrators, Five hundred dollars ($500.00) each year, in advance, while this lease remains in full force and effect.

"The lessee further agrees to pay any taxes or special assessments that may be made upon the improvements erected by it upon the land herein described; or in case any extraordinary tax of any character should be assessed against the land itself growing out of the occupancy and use of such land by the said lessee, will also pay such special assessments or taxes. It being understood that the lessor is liable for and will pay the ordinary land taxes assessed against the owner of the fee, as well as any taxes that may be assessed because of the oil and gas or other mineral value of the land itself.

"The lessee shall have the right at any time to remove all machinery,

buildings, tanks, powers, stations, structures, pipelines or other improvements, placed on said premises, and at the termination of this lease the lessee shall be allowed not to exceed thirty days within which to remove said machinery, buildings, etc.

"All payments which shall fall due under this lease may be made directly to the lessor or deposited to his credit in the Fourth National Bank, Wichita, Kansas.

"The lessee shall not be bound by any change in the ownership of said land until duly notified of any such change, either by notice in writing, duly signed by the parties to the instrument of conveyance or by receipt of the original instrument of conveyance, or duly certified copy thereof.

"It is further agreed that the obligations of this lease will not be effective as to either party unless the lessor (sic) is able to deliver actual possession of the land described within five (5) days from this date.

"All covenants and agreements herein set forth between the parties hereto shall extend to their successors, heirs, administrators and assigns."

(Signatures and acknowledgment omitted.)

On August 4, 1916, a supplemental contract was entered into between the same parties, the sole purpose of which was to correct the description of the real estate covered by the original contract, and this supplemental agreement contained the following provision:

"It is understood by and between parties hereto that this contract is supplementary to the contract of January 1st, 1916, herein referred to, and a part thereof; that the land herein described is leased for the same purpose and under the same terms and conditions, and for the identical consideration and period of time as that described in said contract of January 1st, 1916, all of the terms and conditions therein specified being a part hereof the same as though written herein in full.

"This contract shall extend to and be binding on the heirs, executors, administrators, successors and assigns of the parties hereto."

On September 15, 1916, the lessee in the two foregoing contracts sold and assigned to The Prairie Pipe Line Company all of its right, title and interest under such contracts and the buildings and improvements on the premises in question.

On December 31, 1931, that assignee and the successors in interest to the original owner lessor entered into a written agreement modifying and supplementing the contract of January 1, 1916, and August 4, 1916, in the following particulars: (1) The acreage was reduced from 36.56 acres to 17.76 acres; (2) the annual rental was reduced from $500 to $300, effective January 1, 1932, and (3) lessee was granted the right at its option to renew from year to year the original lease contract as so supplemented and modified upon the expiration of the original term of twenty years. This supplemental agreement contained the following provision:

". . . That otherwise said original lease and agreement and all the terms and provisions thereof shall continue and remain in full force and effect. The right is further hereby granted unto party of the first part, at its option, to renew this lease from year to year after the expiration of the stated term thereof upon payment of such annual rental of $300.00 per year in advance, which right and option of renewal shall continue and remain in full force and effect so long as party of the first part, its successors and assigns shall continue to make use of said premises for the purpose aforesaid."

The Prairie Pipe Line Company continued in possession of the leased premises and used them as a tank and pump station site until March 31, 1932, at which time it sold and assigned all of its interests in and to the original lease contract, as supplemented, to Sinclair Prairie Pipe Line Company. The latter continued in possession of the leased premises and used them as a tank and pump station site until August 31, 1936, on which date it sold and assigned all of its right, title and interest under the lease contract to Sinclair Refining Company, defendant in this action.

In January, 1938, plaintiff herein became the owner of the real estate covered by the original lease, as supplemented. No question is raised concerning the validity of any of the foregoing conveyances and assignments and a recital of them is given merely for the purpose of showing the background of the matter existing at the time suit was filed.

Following execution of the original lease contract of January 1, 1916, certain buildings, tanks and other improvements for use in connection with the stated purpose of the lease were erected by lessee and its successors in interest. All rentals were paid down to and including the year 1945, and on or about January 1, 1946, defendant company advised plaintiff that it was surrendering possession of all the leased premises. This action was filed on October 31, 1947. Motions to elect, to strike, and to make more definite and certain were directed against the petition, but their substance and the rulings thereon are not here important. The amended petition, after reciting the background as hereinbefore summarized, alleges:

"That on or about January 1st, 1946, when the defendant informed the plaintiff they were surrendering possession of said 17.76 acres described in said Leases it failed to, and has at all times since failed and refused to remove therefrom, several hundred feet of concrete sidewalks, concrete foundations for five or six dwelling houses, concrete foundations for four or five garages, concrete foundations for pumps and powers; and failed to take up and remove several hundred feet of pipe lines; failed to tear down and level off the banks of earth tanks; failed to remove large quantities of broken concrete, stones, bricks, iron pipes and other similar refuse; failed to remove and destroy noxious

weeds, grasses, trees, vines, and shrubs; failed to remove oil that had been permitted to flow or be spilled on the soil; failed to fill ditches, sumps, ponds, and other holes and depressions on said leased land, and failed to remove gravel and chat placed thereon for use in roadways and drives."

It then alleges that as of January 1, 1946, the fair and reasonable market value of the land in question would have been $4,000 had it been free from those objects and things above enumerated, but that in its condition as left by defendant its fair and reasonable market value was not to exceed $500; that it would cost not less than $3,500 to restore the property to its former condition so it could be used for farming and stock raising purposes, and the prayer of this cause of action is for damages in the amount of $3,500.

For his second cause of action plaintiff seeks to recover the sum of $350 per year for the years 1946 and 1947, which he alleges to be the fair rental value of the property and of which he was allegedly deprived on account of the acts of defendant heretofore related.

Defendant's demurrer to the amended petition, on the ground that no cause of action was stated, was sustained, and from that ruling plaintiff has appealed.

In his brief plaintiff frankly admits that defendant and its predecessors had the right to build, maintain and use the buildings and improvements on the premises; that defendant would not be liable for all damages arising from the reasonable and ordinary use of the premises; that defendant had the right to remove its property upon surrender of the lease, and that defendant caused no damage by the method or means employed in removing such property as it did remove. In other words, it is not claimed that defendant was guilty of negligence in any manner. Neither does plaintiff claim that the lease contract or supplements contain any provision that the premises should be returned to the owner in as good condition as they formerly were. His whole argument is based upon the proposition that the law implies a covenant on the part of defendant lessee to surrender the premises in as good condition as they formerly were, ordinary wear and tear excepted, citing the general rule to that effect found at 16 R. C. L., Landlord and Tenant, § 238, p. 746, and 32 Am. Jur., Landlord and Tenant, § 802, p. 684; and finally, that the acts of defendant constituted waste.

On the other hand, defendant company contends plaintiff is not entitled to rely on an implied covenant for the reason that the rights and liabilities of the parties were definitely fixed by the express terms of the lease contract and supplements, and that under those

circumstances the law will imply no further covenants or obligations. And, as to plaintiff's second cause of action, it is argued that a landlord is not entitled to recover from a tenant the diminished value of real property caused by the acts or omission of the tenant, and also the rental value of the land for a given period of time.

In our opinion plaintiff's contention, that under the facts of this case there was an implied covenant on the part of defendant lessee to restore the premises to their former condition upon surrender of the lease, is untenable.

At the outset it must be conceded that this was not an ordinary landlord and tenant lease in the usual sense of the word. Its expressed purpose was to provide a site for the construction of tanks, powers, stations, pipelines and other structures for use in the operation by lessee of a tank and pump station. It further provided the lessee was to pay all taxes or special assessments levied against the improvements erected on the premises. Lessee was also given the right at any time to remove all machinery, buidings, tanks, powers, stations, structures, pipelines or other improvements, and upon the termination of the lease it was provided that lessee be allowed not to exceed thirty days within which to remove the improvements thus erected.

Considering the expressed purpose of the lease, plaintiff was bound to know that the lessee, in furtherance thereof, would erect buildings, tanks, pipelines and all other things necessary for the operation of the business at hand. In fact, the right to erect such improvements was granted, but nowhere in the contract is there any provision requiring lessee, upon termination of the lease, to restore the premises to their former condition. As we read this lease contract, defendant lessee was under no duty at any time to remove any of its property. It was given the right and option to do so if it so desired, but nowhere is plaintiff lessor given the right to enforce removal. It therefore follows that since plaintiff had no right to enforce removal he is in no position to complain of the partial removal, which was done under contract right of lessee so to do, in the absence of negligence in accomplishing such partial removal. Had the parties desired to contract that upon termination of the lease defendant would be required to remove all of its property and to restore the premises to their former condition, they could have done so, but here the only covenant touching removal of the property is the one giving lessee the right to remove if it so desires. An

express agreement or covenant excludes the possibility of an implied one of a different or contradictory nature. (14 Am. Jur., Covenants, Conditions and Restrictions, § 14, p. 490.)

While none of our previous decisions appears to have decided the precise question under consideration, our holding is not without precedent in other jurisdictions. The Supreme Court of Oklahoma, in a case almost identical factually, recently (1948) held in accord with the conclusion we have just reached. (*Fox v. Cities Service Oil Co.*, 201 Okla. 17, 200 P. 2d 398.) See also *Arkansas Fuel Oil Co. v. Connellee*, Tex. Civ. App., 39 S. W. 2d 99; *Gulf Oil Corporation v. Horton*, Tex. Civ. App., 143 S. W. 2d 132, and *Farmer v. Golden Rule Oil Co.*, 130 Kan. 803, 807, 287 Pac. 706.

We have given careful consideration to each of the arguments, citations and illustrations urged by counsel for plaintiff, but in our opinion none is persuasive under the particular facts now before us. By the terms of this lease the lessee had the right to erect the improvements in question. It was under no duty to remove them, although it was granted the right and option to do so if it saw fit. The lessor could not require removal. No claim is made that lessee was negligent in its use of the property or in the manner of removal of that part removed. The only claim is, that by virtue of an implied covenant, lessee should have removed all of the property and restored the premises to their former condition. This, we have already shown, lessee was not obligated to do.

What has been said also disposes of plaintiff's contention with respect to his right to recover the fair rental value of the premises in question. The demurrer to the amended petition was properly sustained and the judgment of the lower court is affirmed.

HARVEY, C. J., and SMITH, J., dissenting.