**Alfred M. McLEOD and Besse McLeod, Plaintiffs,**

v.

**CITIES SERVICE GAS COMPANY, a corporation; and Charles Miller, Tonganoxie, Kansas, Defendants.**

Civ. No. T–827.

United States District Court
D. Kansas.

March 23, 1955.

James Lester, Oskaloosa, Kan., and Howell & Rayburn, Kansas City, Mo., for plaintiffs.

O. R. Stites, Oklahoma City, Okl., William C. Leech, Oskaloosa, Kan., and William F. Pielsticker, Wichita, Kan., for defendants.

WALLACE, District Judge.

Plaintiffs, Alfred M. McLeod and Besse McLeod, Kansas citizens, bring this action against the defendants, Cities Service Gas Company, a Delaware cor-

poration (herein referred to as "Cities") and Charles Miller, a Kansas citizen, to recover money judgments for real and personal property losses allegedly suffered by plaintiffs because of the negligent, and otherwise unlawful, acts of the defendants while the defendants were on plaintiffs' lands pursuant to certain lease arrangements.

Plaintiffs' "Third Amended Petition for Damages" contains, in substance, the following:

In Count I, plaintiff, Besse McLeod, asks for $20,000 actual damages and $9,000 punitive damages from Cities for the alleged wilful and reckless spreading of oil, sludge and basic sediment from three refuse ponds located on 252 acres owned by plaintiff permanently damaging about 10 acres of such land;[1] the dismantling, scattering and littering of pipe and other oil field equipment and debris over the entire premises; the unnecessary destroying of fences; and, the excessive appropriating of land area for vehicle driveways and roads. The elements making up the alleged actual damages include permanent damage to land, growing crop damage, and temporary pasture depreciation.

In Count II, plaintiff Alfred M. McLeod, seeks to recover $5,000 from defendant Cities for damages to crops, pastures, terracing and fertility and productivity of the three tracts making up the 214 acres brought on by wrongful acts of the same character alleged by plaintiff Besse McLeod in Count I.[2]

In Count III, plaintiff Alfred M. McLeod, asks to recover a total of $6,000 from both defendants for damage to plaintiff's 88 acre tract wherein allegedly

---

1. The legal description of the land involved in Count I is: "The SE/4 of Section 5, and the W/2 of the SW/4 of Section 4, and the W/2 of Lot 3, according to Goverment Plat, in the Northwest fractional Quarter of Section 4, lying directly North of the W/2 of the SW/4 of said Section 4, and South of the Delaware Reserve line, all in Township 10 South, Range 20 East, containing 252.17 acres, more or less, Jefferson County, Kansas.

   In addition to negligence, plaintiff urges a violation of Kans.Gen.Stat. § 55–121, 1953 Supp., which provides: "Salt water, oil or refuse from wells; prevention of escape. It shall be unlawful for any person, having possession or control of any well drilled, or being drilled for oil or gas, either as contractor, owner, lessee, agent or manager, or in any other capacity, to permit salt water, oil or refuse from any such well, to escape by overflow, seepage or otherwise from the vicinity of such well, and it shall .be the duty of any such person to keep such salt water, oil or refuse safely confined in tanks, pipe lines or ponds, so as to prevent the escape thereof: Provided, however, That this act shall not be construed to apply to the escape of salt water, oil or refuse because of circumstances beyond the control of the person in the possession or control of such well and under circumstances which could not have been reasonably anticipated and guarded against. * * * "

2. The three tracts involved in Count II are described as: "The E/2 of the SW/4, and all of the E/2 of Lot 3 of the Northwest fractional quarter of Section 4, Township 10 South, of Range 20 East, said land lying directly north of the first above described land, and south of the line of Delaware Reserve lands, and; the N/2 of the NW/4 of Section 9, Township 10 South, of Range 20 East, excepting any railroad right of way thereon, and; commencing at the Northeast corner of Section 8, Township 10 South, Range 20 East; thence South of Section line 1312½ feet to the North line of the Leavenworth and Topeka Railway right of way; thence West along said line 1270 feet; thence North 77 degrees 6 minutes, West 540.8 feet; thence North 429 feet; thence East 300 feet; thence North 145 feet; thence East 329 feet; thence North C14 feet; thence East 1197.75 feet to place of beginning, except the following tract, beginning at a point on the Southeast corner of Outlot 104, City of McLouth, and running thence East along the Michael Martin property 237 feet, running thence South to the South Line of the right-of-way of the Kansas City Northwestern Railroad 565 feet, running thence Westerly along the South line of said right-of-way to the point directly South of the place of beginning, running thence North to the place of beginning 512 feet, all in the Northeast Quarter of Section 8, Township 10 South, Range 20 East, Jefferson County, Kansas.

a water well was destroyed and the terracing and grass crop on such tract were damaged from the joint and concurring carelessness of defendants' employees.[3]

In Count IV, plaintiff, Alfred M. McLeod, seeks $2,000 actual and $1,000 punitive damages from defendant Cities Service for damages suffered by the 88 acre tract (described in Count III) from the acts of Cities Service employees in ripping out embankments of ponds containing sludge, basic sediment and other refuse and permitting such waste to flow over the land, permanently damaging the land overflowed by such sludge and reducing the value of the remainder of the tract by the tracking of such sludge and refuse by plaintiff's cattle over the entire tract.

In Count V, plaintiff Alfred M. McLeod, asserts that as a further result of the unlawful acts of defendants' employees described in Counts I, II and III, plaintiff suffered a $30,000 loss from being forced to ship his cattle to Iowa for feeding rather than leaving them on the described lands; and, in addition claims $5,000 damage to his sheep from coming in contact with the sludge, basic sediment and other refuse described in the previous Counts.

The case was tried to the Court without a jury and taken under advisement at the conclusion of all evidence. The land involved in this controversy was personally viewed by the Court; and, counsel were permitted to submit briefs.

Plaintiffs' requests for relief may be classified into three basic categories: (1) permanent damages (to land); (2) temporary damages (to terraces, ponds, brome grass and fences on land); and, (3) livestock operational losses. These issues will be dealt with separately and in the order just mentioned.

■■ The Court is of the opinion that neither of plaintiffs is entitled to recover for alleged *permanent damages* to the lands in question for the reason that such permanent damages resulted from work by Cities employees in filling in slush and refuse pits and disposing of such refuse at the direction of plaintiff, Alfred M. McLeod, owner, or agent for owner, of all lands affected.[4] Inasmuch as Cities was under no legal obligation to clean up the slush pits;[5] the Court can but give credence to Cities testimony that such work was done as an accommodation to plaintiffs to promote good relations between the gas storage lessee and the lessors. Once it

3. The 88 acres involved in Count III is described as: "The W/2 of the NW/4 of Section 8; also beginning at the Northeast corner of the W/2 of the NW/4 of Section 8; thence East on the section line 4.82 chains; thence South and parallel to the West line of said Section to the center line of the right-of-way of the L. T. & S. W. Railroad; thence West along the center line of said Railroad right of way to the East line of the W/2 of the NW/4 of said Section 8, thence North to place of beginning, all in Township 10 South, Range 20 East, containing 88.4 acres, more or less, Jefferson County, Kansas.

4. Consequently, the pleaded statute, see fn. 1, supra, paragraph 2, has no possible application to the instant case.

5. Neither the mineral leases to defendant Miller, nor the gas storage leases to defendant Cities expressly required a cleaning up of the premises; and, as ruled in Duvanel v. Sinclair Refining Co., 1951, 170 Kan. 483, 227 P.2d 88,

Syl. No. 2, 23 A.L.R.2d 649: "In an action to recover damages for failure of defendant lessee to restore premises owned by plaintiff lessor to their original condition upon surrender of possession thereof, after they had been used as a tank and pump station site under a written lease authorizing their use for such purpose, the record is examined and it is held: Since by the terms of the lease the lessee had the right to construct the improvements that it did and to remove them at its option, with no right on the part of lessor to require removal, lessor cannot be heard to complain because of only partial removal, in the absence of negligence in accomplishing such partial removal, and there is no implied covenant on the part of lessee to restore the premises in question to their original condition." Accord, Fox v. Cities Service Oil Co., 1948, 201 Okl. 17, 200 P.2d 398; Arkansas Fuel Oil Co. v. Connellee, Tex.Civ.App.1931, 39 S.W.2d 99.

was discovered that the pits could not be filled in as requested by Mr. McLeod, Cities' employees proceeded with all diligence to properly complete the cleanup. When it developed that the sludge and refuse could not be covered with dirt, Cities promptly gained permission to haul off the waste material and deposit it in a gully located on the McLeod premises.[6] Although all persons engaged in the cleanup learned the attempt to fill in was a mistake, plaintiffs cannot be heard to complain inasmuch as the cleanup was begun and conducted in accordance with McLeod's expressed wishes; and, at all times Cities' employees evidenced good faith, continuing the cleanup until a workmanlike finish was achieved.[7]

As to *temporary damages,* the Court has concluded that only a very limited recovery should be permitted.

■■■ .Although the evidence indicates that Cities employees did do some temporary damage to terraces and brome grass, plaintiffs' proof fails to establish by the requisite measure that any of such damage resulted from a negligent or unreasonable use of the leased premises. It is, of course, understood that a lessee may make reasonable use of the leased land in carrying out the legitimate object of the lease.[8]

■■ Also, the Court finds no merit in plaintiffs' assertions that Cities was guilty of negligence or other misconduct in the general cleaning up and removal of oil field equipment sold to Cities and left on the premises by the original mineral lessee. Under the gas storage lease, Cities had the right to make reasonable use of the premises, including an alteration or removal of the purchased equipment; and, the preponderance of the evidence discloses that plaintiffs' lands were in much better condition after Cities operations than before Cities went on the properties. However, under the express terms of the gas storage lease, plaintiffs are entitled to recover for all brome grass destroyed by Cities in their work and operations.[9]

The Court has further concluded that neither of the defendants is liable for the alleged *livestock operational losses* of plaintiff, Alfred M. McLeod.

■ Neither defendant Cities nor defendant Miller was guilty of misconduct which necessitated a shipping of cattle and sheep from the lands in question to other locations. If the sheep wool be-

---

6. See "Release" executed by plaintiffs to defendant Cities on August 6, 1952. (DX–I)

7. As mentioned in 1 Am.Jur. § 17, p. 415: "It is a general rule that one cannot maintain an action for a wrong occasioned by an act to which he has consented, under the familiar maxim 'volenti non fit injuria,' except where the act involves the life or person of a citizen, or a breach of the peace, or amounts to a public offense, as in cases of mutual combat. This rule finds application in civil actions for injuries arising from such acts as the creation of a nuisance, an invasion or realty, the use, destruction, or injury of personal property * * *"; and, as further stated in 1 Am.Jur. § 33, p. 425: "Any injury or damage which is occasioned by the doing of a lawful act or the exercise of a legal right, or by doing a thing authorized by law, in the authorized way, is damnum absque injuria. * * *" The credibility of plaintiffs' claim is further weak-

ened in that McLeod previously sued and then settled with the original mineral lessee, defendant Miller, charging in part permanent damage to the same lands because of the escape of salt water, oil and refuse. Defendant Miller testified these same refuse ponds were involved.

8. "If in the grant or reservation of a separate interest in oil and gas the grantor does not expressly grant or retain such legal relations as are necessary for the production and operation of the land for oil and gas purposes, these relations are held to be created by implication." Vol. 1A Summers Oil and Gas (Perm.Ed.) § 33, pp. 229, 230, 231. Significantly, at pre-trial, plaintiffs' counsel indicated no complaint was being urged against Cities in connection with Cities' activities under the gas storage lease.

9. See for example "Gas Storage Lease" (DX–F) paragraph 8, which provides: "Second Party shall pay for damages caused by its operations to growing crops on said lands * * *".

came damaged by oil and basic sediment such damage resulted from a condition which existed at the time Cities first went on the leased lands;[10] and, the further condition which existed pursuant to the rightful operation of Cities under its lease and pursuant to accommodation cleaning up at plaintiffs' own request.

Any shipping of cattle from the premises in question was not brought on by negligent, or otherwise unlawful acts by either defendant. If the condition of the lands was such that Mr. McLeod deemed it advisable to move the cattle therefrom, such condition did not exist by virtue of acts by the defendants for which they are now responsible to McLeod.[11]

In summary, the Court concludes:

1. Plaintiff, Besse McLeod, is entitled to judgment against defendant Cities for $750 on Count I.[12]

2. Plaintiff, Alfred M. McLeod, is entitled to judgment against defendant Cities for $300 on Count II.[13]

3. Plaintiff, Alfred M. McLeod, is entitled to judgment against Cities for $150 on Count III.[14]

4. Defendant Cities is entitled to judgment on IV.[15]

5. Defendants are entitled to judgment on Count V.

Costs of this action are assessed against defendant Cities.

Within 15 days counsel should submit a journal entry which conforms with this opinion.

10. At the time of the execution of the Gas Storage Leases there were three unfenced basic sediment ponds or slush pits located on the 252 acre tract, referred to in Count I, which pits had resulted from operations under a previous mineral lease prior to the time Cities leased the properties and came on the premises.

11. Unless expressly so required under the lease terms an oil and gas lessee is not required to fence slush or refuse pits. Pitzer & West v. Williamson, Tex.Civ. App.1942, 159 S.W.2d 181. Cf. Wellsville Oil Co. v. Carver, 1952, 206 Okl. 181, 242 P.2d 151. Moreover, plaintiff, in any event was guilty of contributory negligence in knowingly exposing the sheep to the oil and basic sediment hazard, and would be barred from recovery even had Cities been guilty of primary negligence. Read Pitzer & West case, supra.

12. Compensation for 25 acres of growing crops (brome grass) at $30 per acre.

13. Compensation for 10 acres of growing crops (brome grass) at $30 per acre.

14. Compensation for 5 acres of growing crops (brome grass) at $30 per acre.
There is no evidence that waterwell was damaged as alleged in Count III. In addition, plaintiff in his submitted brief and requested findings of fact and conclusions of law makes no request for recovery for such alleged loss.

15. Inasmuch as no ponds or slush pits existed on the 88 acres mentioned in this Count, the allegations of necessity are in error.