346 So.2d 1342 (1977)
Dejean BROUSSARD, Plaintiff-Appellee,
v.
Robert L. WATERBURY, Defendant-Appellant.
No. 5848.
Court of Appeal of Louisiana, Third Circuit.
May 13, 1977.
Rehearing Denied June 24, 1977.
Henican, James & Cleveland by Carl W. Cleveland, New Orleans, for defendant-appellant.
Olivier & Brinkhaus by John L. Olivier, Sunset, for plaintiff-appellee.
Before CULPEPPER, WATSON and STOKER, JJ.
WATSON, Judge.
This is a suit for damages to real property. Plaintiff, Dejean Broussard, alleged that defendant, Robert Waterbury, operated two oil wells on plaintiff's farm, and failed to restore the surface when he ceased operations. The trial court awarded damages of $9,000 for defendant's failure to restore the surface of the property to a reasonable state when the wells stopped producing oil. Defendant appealed. Plaintiff answered the appeal, seeking an increase in damages and an increase in the amount of expert witness fees.
The substantial issues are:
(1) Did defendant have a duty to restore the surface of the Broussard property?
(2) If he did, is the award adequate for its restoration? and
(3) Did the trial court err in fixing expert witness fees?
The basic facts are undisputed. Plaintiff Broussard is the owner of about 21 acres of land upon which he grazes cattle. Some time in the early 1960s, two producing oil wells were drilled on this property. The wells were not drilled or initially operated by defendant.
Waterbury became operator of the two wells on the Broussard property about 1970. They ceased to produce oil in 1973. Waterbury then abandoned them, leaving Broussard's property in the same condition it was in when he took over operations. Four large slush pits were left open and certain production equipment was left on the property.
*1343 Waterbury testified that the slush pits had been dug by previous operators. He denied Broussard's allegations of negligence and insisted operations were conducted in a prudent manner. Broussard testified that Waterbury operated the wells in a satisfactory manner, according to what plaintiff Broussard expected of an oil and gas operator.
On September 10, 1973, Broussard filed this suit for damages resulting from Waterbury's failure to restore the surface. Broussard alleged three acres of his land were rendered useless for agricultural purposes by the presence of salt water, oil, open pits and abandoned equipment. Plaintiff originally prayed for $6,000 in damages but amended his petition to increase the claim to $19,500, on the ground that the highest and best use of the property was for suburban homesites, not pasture.
In the summer of 1975, prior to trial, Waterbury hired a contractor who filled in the open pits and knocked down the "spoil banks" or levees with a bulldozer in an attempt to level the property around the wellsites. Testimony and invoices show Waterbury spent about $3,000 in his efforts to level the property and seed it with grass. Pictures taken before and after these restoration attempts show the property was improved but not totally restored.
In his written reasons for judgment, the trial judge gave this evaluation of the subject property:
"The restoration procedures failed to restore the land to substantially the same condition as it was prior to the explorations; pits which covered approximately three acres were not properly drained and fill placed thereon has failed to restore surface solidity. Instead, these areas remain boggy. The whole area, which consists of approximately five acres, was abandoned with oil deposits left on the land; the top soil was covered with subsoil; the property left uneven; and saline spots were left throughout the area. Soil samples taken indicate a high salt level and high specific gravity of the soil.
"(2) Testimony elicited on behalf of the plaintiff of Mr. Edmond Dupre, Jr., consulting engineer, was to the effect that costs would amount to approximately $12,000.00 to restore the area in substantially the same condition as it was prior to the mineral operations. As of the date of trial, the property was largely marsh-like and desert-like in appearance, as more fully appears by photographs of the subject property made part of the record. Clearly, no agricultural or other use can be made of this property in its present condition." (TR. 95-96)
Appraisers testified that the highest and best use of the property was for homesites. According to their estimates, the total value of the 21-acre tract, if it were in perfect condition, would be $39,495. They estimated this value was reduced by $14,500 as a result of oil production operations.
To fix Waterbury's duty in restoration of the surface it is necessary to determine the legal relationship between the parties. There is no written lease, but Waterbury operated the wells as a mineral lessee with plaintiff as the lessor, according to the allegations of his answer and reconventional demand. Also, Waterbury asked Broussard in the course of examination at trial[1]: "And the only time after that first lease was when you leased your property to me?" Broussard answered: "Yes, after the well was produced the only lease I ever got was from Mr. Robert Waterbury [the defendant]". There is no evidence of the terms of the lease.
However, Waterbury occupied the status of mineral lessee. His obligation was thus to:
". . . maintain and restore the premises in the condition he found them subject to his rightful use, and where he has damaged the land it is his duty to appropriately remedy the condition brought on by his use of the lease." Smith v. Schuster, 66 So.2d 430 at 431-432 (La.App. 2 Cir. 1953)
*1344 We are aware of a contrary view expressed in Rohner v. Austral Oil Exploration Company, Inc., 104 So.2d 253 (La.App. 1 Cir. 1958).
The comment to Article 122 of the Louisiana Mineral Code[2] suggests that the obligation to restore the surface is based on Civil Code articles 2719 and 2720[3] and we agree. The obligation under both articles is to return the thing leased in the "same state" as received. The comment further suggests that the jurisprudence cited has applied a standard of reasonableness to the restoration, and again we agree.
In the present case, Waterbury had an obligation to reasonably restore the land to the same state as before the drilling and production. The trial court held that he had failed to do so and found that an award of $9,000 was appropriate. On the basis of the expert testimony, the amount awarded plus the $3,000 already expended by defendant on the property constitute a reasonable amount for restoration. The amount of the award in this case should be reviewed on the basis of the trial court's much discretion allowed by LSA-C.C. art. 1934.
Plaintiff contends by answer to the appeal that the award should be increased and that the expert witness fees are inadequate. We find no merit in these contentions. There is no error.
For the reasons assigned, the judgment of the trial court is affirmed. Appellant is to pay all costs.
AFFIRMED.
CULPEPPER, J., dissents and will assign written reasons.
CULPEPPER, Judge, dissenting.
My principal reason for dissenting is that the plaintiff landowner did not prove any lease or other contract under which Waterbury is obligated to restore the surface of the land to the condition which it was in before the first of these two wells was drilled in the early 1960s. Actually, plaintiff's petition is drawn as a suit in tort. It alleges damages to the surface of plaintiff's property caused by defendant's "negligence" in leaving open pits and the residue of salt water and oil spillage when defendant abandoned the wells in 1973. However, it is clear that defendant Waterbury is not liable in tort, since he admittedly operated these two wells under a lease from the landowner.
Defendant testified he operated the wells as the designated operator under a mineral lease. He filed in evidence as Exhibit D-8 a copy of a lease from Dejean Broussard to W. W. Lomerson and C. R. Craig, dated October 5, 1970, it being defendant's uncontradicted contention that this is the lease under which he operated the well. The only provision in this lease as to surface damage is that the lessee is responsible "for all damages to timber and growing crops", of which there was none.
The defendant Waterbury's testimony is also uncontradicted that all of the pits were dug and the salt water and oil spilled on this property by previous operators of the wells. Actually, as stated in the majority opinion, the plaintiff Broussard himself admitted that he had no objection to the manner in which Mr. Waterbury operated the wells after 1970.
Since Waterbury is not liable in tort, and the only evidence as to defendant's liability under the terms of any lease is the lease dated October 4, 1970, which defendant himself introduced into evidence, it is my view that the defendant Waterbury is liable only to reasonably restore the surface of the land to the condition which it was in at the time of the 1970 lease. He has more than performed this duty. After this suit was filed, Waterbury spent over $3,000 leveling the pits, hauling in some top soil to cover the salt water and oil spillage and planting rye grass.
In my view, the majority has held the defendant Waterbury liable for damages that were caused by previous operators under *1345 previous leases. I cannot agree that Waterbury is liable for all of the damages to the surface, just because he happened to be the last person to operate the wells before they went dry.
For the reasons assigned, I respectfully dissent.
NOTES
[1] Waterbury, an accountant and oil operator, represented himself at the trial of the case.
[2] LSA-R.S. 31:122
[3] LSA-C.C. arts. 2719-2720