Orville NICHOLS, Mary E. Nichols, Carlton Nichols, John Nichols, Kathleen Mattox, Mary C. Nichols, Orville Nichols, Jr., and Richard Nichols, Appellees,

v.

BURK ROYALTY COMPANY, a corporation, Cable Oil Company, a corporation, and J. C. Reynolds, Appellants.

No. 48365.

Court of Appeals of Oklahoma, Division No. 2.

April 12, 1977.

Rehearing Denied May 4, 1977.

Certiorari Denied Feb. 22, 1978.

Released for Publication by Order of Court of Appeals Feb. 23, 1978.

, Anthony M. Massad, Massad & Amyx, Frederick, for appellees.

Max H. Lawrence, Oklahoma City, for appellants.

BRIGHTMIRE, Presiding Judge.

Oil and gas lessees complain of a judgment on a verdict awarding landowners damages for permanent injury from escaping deleterious oil well substances to what was once fertile and productive farmland.

I

Plaintiffs acquired the 160-acre tract involved in this action in 1965. It has been subject to an oil and gas lease since 1956 pursuant to which 14 producing wells have been drilled. By 1964 primary production had decreased to the point where it was necessary to commence waterflooding operations. This project required conversion of a well site in the northeast corner of the acreage into a saltwater disposal well and erection of two water storage tanks in the tank battery on the south central portion of the farm. From the time this was accomplished, leaks from pipelines accompanied by overflow from slush pits and saltwater holding tanks saturated plaintiffs' land destroying, plaintiffs said, about 50 acres of their farmland for agricultural purposes.

On November 27, 1974, after learning the results of soil analysis tests run on their property, plaintiffs filed this lawsuit against defendant lessees, seeking $35,000 in damages for permanent injury to the 50 acres. The petition charged that defendants intentionally permitted escape of the toxic substances in violation of statutory law so that they should have to pay plaintiffs $100,000 in punitive damages.[1]

---

1. In a separate cause of action, plaintiffs further requested cancellation and release of the mineral lease as a cloud upon their title; however, judgment on this count was rendered for plaintiffs on their motion for judgment on the pleadings the first day of trial. Defendants had at time of trial already begun plugging operations. That judgment is not involved in this appeal.

Defendants answered with a general denial and the specific theory that punitive damages were not recoverable because the action was based on breach of lease terms, i. e., ex contractu. Later by amendment defendants also raised a statute of limitations defense.

A jury trial on March 17, 1975 resulted in a verdict against defendants awarding plaintiffs $18,000 actual and $15,000 punitive damages. It is from a judgment thereon that defendants appeal contending in substance under eight separately stated propositions that: (1) there was not sufficient evidence adduced to warrant a verdict for either actual or punitive damages; (2) the action was barred by the statute of limitations; (3) there were instructional errors; (4) incompetent evidence was admitted; and (5) the verdict is excessive.

## II

■ With regard to defendants' first complaint we are of the opinion that sufficient competent evidence was introduced to support a verdict for both actual and punitive damages.

Defendants in their opening statement admitted to the jury they knew they had spilled salt water and other deleterious substances over plaintiffs' land saying, ". . . We have spilled some salt water on Mr. Nichols' land . . . we know we owe Mr. Nichols some damages there. We have a disagreement . . . as to precisely how much his land was damaged, if any. We're uncertain ourselves."

Thus with the fact of their injurious spillage having been admitted by defendants the only things left for plaintiffs to prove were the nature and extent of the injury and the amount of damages to be awarded.

Champlin Ref. Co. v. Rayburn, Okl., 323 P.2d 967 (1958). Of course to warrant punitive damages there would also have to be proof that the fluid was intentionally allowed to escape or else that it resulted from such gross carelessness as to imply an utter disregard for plaintiffs' rights and interests. 23 O.S.1971 § 9; Aaronson v. Peyton, 110 Okl. 114, 236 P. 586 (1925); Sopkin v. Premier Pontiac, Inc., Okl.App., 539 P.2d 1393 (1975).

■ Since, as we have seen, plaintiffs presented a prima facie case entitling them to at least some recovery, the verdict does not suffer from lack of sufficient evidence.[2] Other aspects of damages will be dealt with in connection with the disposition of other legal issues raised.

## III

The admission of testimony offered by plaintiffs concerning measure of damages was wrong, say defendants, because the witnesses were not shown to have been familiar with the property evaluated, their testimony was not sufficiently "specific" concerning location or dates, and plaintiffs failed to carry their burden of providing adequate proof of measure of damages upon which the jury could act.

Plaintiff presented testimony of two real estate brokers both of whom claimed familiarity with the specific farm and with prices of real estate in the general locale. One witness, John Kent, testified that prior to October 1974 and any permanent injury, the quarter section's value was $75,000. Its present value Kent estimated at $50,000. The other witness, Ray Patterson, gave an October 1974, pre-injury estimate of $80,-000, and set $45,000 as the farm's value at

2. Defendants also complain that the instructions used the term negligence per se rather than the word nuisance as used in plaintiffs' petition. The difference is without a material distinction in this case since the thrust of plaintiffs' pleading and the instructions is defendants' breach of a statutory duty to prevent the escape of toxic fluids from their oil production facilities. See 52 O.S.1971 § 296. So the important thing is that the instructions made it clear that the lawsuit involved a determination of whether defendants breached this duty and if so was it the proximate cause of damage and if so to what extent. Defendants as we mentioned earlier admitted the first two elements in opening statement. What the court called that breach of duty is immaterial.

time of trial in its then condition. The October 1974 date was used because that was the time plaintiffs learned of results of the soil and water tests. Defendants offered no evidence of the value of the property at any time.

■ The measure of damages for permanent injury to real property is the difference between the fair market value of the property immediately before the injury and that value immediately after. *Stekoll v. Prevett*, Okl., 359 P.2d 579 (1961); *Mid-Continent Pipe Line Co. v. Eberwein*, Okl., 333 P.2d 561 (1958). Plaintiff carries the burden of proving a basis upon which the jury may calculate financial detriment. *Wood Oil Co. v. Endicott*, 205 Okl. 59, 234 P.2d 371 (1951).

In *Stekoll, supra*, plaintiff's witness testified to pre-saltwater pollution value of $60 per acre and stated that because of the pollution the value had been reduced by one-half. The court there held that the undisputed evidence was sufficient to come within the measure of damages rule. In *Sunray DX Oil Co. v. Brown*, Okl., 477 P.2d 67 (1970), an instruction omitting the word "immediately" was held to be harmless error.

Both of plaintiffs' witnesses based their before calculations upon the date permanent injury was first recognized and their after evaluations at the time of trial—an approach approved in *Endicott, supra*.

■ Where, as here, there is evidence of a difference in market value of injured property before and after the injury which is in excess of the sum allowed as damages by the jury's verdict, the verdict will not be disturbed on appeal on grounds of insufficiency of evidence. *Stekoll v. Prevett, supra*. The verdict in this case was for about half of the amount of damages proved by plaintiffs.

## IV

■ Related to the above is defendants' attack upon the jury's award of punitive damages. They say it was not warranted by the evidence and that the source of the error can be traced to an erroneous instruction on the subject. In instruction number five the jury was told:

"You are instructed that in this case, the plaintiffs, in addition to seeking actual damages to their land, are also seeking punitive damages in an amount not to exceed $100,000.00.

"Punitive damages are such damages allowed by law in addition to actual damages by way of punishment to the defendants in cases where the acts complained of are found to be grossly negligent acts and omissions on the part of the defendants amounting to wanton disregard of the rights of plaintiffs to not have their land damaged by defendants' operations, or if the defendants knowingly, or evidence shows they should have known, permitted oil, deleterious substance or salt water to flow upon plaintiffs' land to their damage, or if said acts were intentional.

"In this regard, you are instructed that if you find from the evidence that the acts complained of on the part of defendants did cause actual damages to the plaintiffs and that defendants were guilty of gross and wanton negligence, or that the defendants knew or should have known their acts would create damage to plaintiffs' land, or continued said acts after it became obvious said acts were creating damage to the plaintiffs, then in addition to plaintiffs' actual damages, you may award to the plaintiffs as punitive damages such amount but not to exceed $100,000.00 by way of punitive damages.

"You may not find any punitive damages unless you first find actual damages."

Defendants tendered a requested instruction which in substance said about the same thing. We believe the one given by the trial court presented the law adequately and in a way not unfair to defendants. The more important question is whether the evidence warranted the instruction at all.

■ In *Sunray DX Oil Co. v. Brown, supra*, an award of punitive damages was upheld where defendants knew of the pollutive leaks, but did nothing for a period of

two years to replace deteriorated pipes causing the leakage. Defendants' failure was held to be wanton or reckless disregard for rights of plaintiff. Punitive damages were ruled to be warranted in *Cities Service Oil Co. v. Merritt*, Okl., 332 P.2d 677 (1958), an action for subterranean pollution by oil and gas lessee. There saltwater spillage had been allowed to continue in excessive quantities unabated for almost 20 years. Defendants knew this, yet made no substantial change to prevent it.

In the case at bar saltwater pollution had been occurring on Nichols' farm periodically for about 10 years. It resulted primarily from both rusted-out pipes and holding tanks. Defendants knew this because they kept repairing frequent leaks. Indeed one defense witness attributed the rupture of a saltwater holding tank to its having rusted out. These facts permit the inference that defendants knew their lines and tanks were not of sufficient quality to protect plaintiffs' land from leaks and larger discharges, and yet for nearly a decade, they were content to make post-spill repair rather than pre-pollution replacement. This manifested a reckless and aggravating disregard for the rights of plaintiffs and an indifference regarding the fertility of their soil. In this the factual situation differs from that in the case cited by defendants—*Keener Oil & Gas Co. v. Stewart*, 172 Okl. 143, 45 P.2d 121 (1935). There was, therefore, sufficient evidence to warrant submission of the punitive damages issue to the jury.

### V

■ Defendants' third complaint regarding damages is that the amount of the award is excessive as a result of the jury's having been so overcome by emotion that they ignored the evidence. The sole reason assigned for this conclusion in defendants' half-page argument is that the trial court committed a "multitude of errors, each and all of which could arouse antipathy and prejudice of the jury to an unconscionably high degree against defendants."

The short answer to this argument is that first of all we are unable to find any significant error in the proceedings prejudicial to defendants, and secondly, since the amount of actual damages awarded is well within the confines of the proof we cannot say it resulted from any spirit other than one of fairness. Certainly it does not shock the conscience of this court.

With respect to the $15,000 in punitive damages awarded we have no basis for saying that it does not take this much to inflict a reasonable punishment on defendants. Whether they have immense wealth or are destitute is not shown. We presume the jury arrived at a figure under the circumstances that is within permissible limits so far as relevant legal criteria are concerned. *Fawcett Publications, Inc. v. Morris*, Okl., 377 P.2d 42 (1962).

### VI

Another error defendants say the jury committed was in its ignoring instructions concerning the statute of limitations and consequently refusing to find that the two-year time limit had run by the time plaintiffs' action was commenced. Pursuant to a request of defendants the trial court instructed the jury that plaintiffs could recover for permanent damage to their land which became apparent within two years prior to the filing of this action. In further explanation the jury was told plaintiffs could not recover for damage which became obvious prior to November 27, 1972.

On this issue conflicting evidence was adduced. Plaintiff Orville Nichols said the diminished 1973 crop yield was what first made him think "something" was wrong with his farm's soil and caused him to have a soil test run in September 1974. Test results were received the following month. Again, it is the October 1974 date which plaintiffs rely upon as the time when permanent injury became obvious and apparent. Nichols said his tenants may have discussed apparent crop destruction with him in spring 1972, but at that time he assumed any injury was only temporary. The Nichols' present tenant, Wayne Kent, first noticed decreased crop productivity in the spring of 1973. On the other hand a former tenant, Waldrop, stated in his depo-

sitional testimony that frequent spills onto the southwest corner had affected crop yield as early as "several years" prior to 1972. One year—1968 from previous testimony—Waldrop received a compensation check for crop damage. When spills had occurred he had notified Nichols. In 1973 and 1974, there were, according to defendants' witnesses, saltwater leaks in a two-inch pipeline, leaks in the filter system of the saltwater holding tanks, saltwater spillage from a "heater-treater," overflow of salt water and oil from the tank battery area after a heavy rain, and rupture and overflow of salt water and oil from a rusty saltwater storage tank.

■■■ The instruction given correctly explained that the limitation period commences when it becomes obvious that permanent injury has been suffered. Where the evidence is conflicting, the question is one for the jury. *H. F. Wilcox Oil & Gas Co. v. Juedeman*, 187 Okl. 382, 101 P.2d 1050 (1940); *Magnolia Petroleum Co. v. Norvell*, 205 Okl. 645, 240 P.2d 80 (1952). Here the jury apparently found that any permanent injury had occurred within two years prior to the suit's having been filed. We cannot say it ignored either the instructions or the evidence.

### VII

■ Finally defendants say the court erred in failing to instruct the jury defendants had a surface lease on, and therefore had a right to use, two acres of plaintiffs' surface in connection with defendants' operations, including disposal of salt water. Defendants argue the lower court improperly refused their requested instruction which would have charged the jury to disregard those two acres in its deliberations.

The trial court properly refused the requested instruction because it did not correctly recite the applicable law and would have misled the jury. The request, in effect, asked the court to conclude that the two leased acres should be excluded from jury consideration of surface damage—a conclusion which was to be founded on an inference the court was to draw from the absence of lease provisions imposing a duty upon defendants to: (1) restore land covered by the lease to its former condition; (2) leave the land in as good condition as it was when possession was first taken.

In taking such a position defendants are in reality saying that their surface lease gave them the right to destroy the entire two acres. We do not read this into the agreement. While there is no evidence on the subject we assume defendants' oil and gas operations can cause changes in the land which may or may not be permanent—changes which can be wrought by other than an escape of toxic waste and salt water. Under the lease it is true that neither land restoration nor elimination of such damage is required. But it does not follow from this that the lease authorized defendants to permit the illegal escape of waste and salt water, nor did the lease include a provision specifying that the lessor waived his right to recover damages caused by unlawful acts of lessees. In other words we do not interpret the non restoration provisions of the lease as giving defendants the right to destroy land in violation of the law.

Since the judgment below did not result from reversible error, it is affirmed.

BACON and NEPTUNE, JJ., concur.