Bobbye Farrar BONDS v. SANCHEZ-O'BRIEN OIL
AND GAS COMPANY

86-48                                          715 S.W.2d 444

Supreme Court of Arkansas
Opinion delivered September 15, 1986

*Steve R. Crane*, for appellant.

*Keith, Clegg & Eckert*, for appellee.

ROBERT H. DUDLEY, Justice. The sole issue in this case is whether the lessee of an oil and gas lease has an implied duty upon termination of production, or upon the drilling of a dry hole, to restore the surface of the land, as nearly as practicable, to the same condition as it was prior to drilling. We hold that the lessee has such a duty.

Eddie Smith, the predecessor in title to appellant, Bobbye Bonds, executed an oil and gas lease in July 1977. In 1979, a well was drilled and completed as a producer on the land. At that time the Cotton Petroleum Corporation, the owner of the lease, paid Smith for all location damages and took a release from liability for those damages. In January 1981, Smith executed a warranty deed for the surface to appellant Bonds. In December 1984, the operator of the well, appellee Sanchez-O'Brien Oil and Gas Company, plugged and abandoned the well, but left water pits, concrete slabs, dams, and winrock stone on the surface.

There is no need to recite all of the other facts or the pleadings since the parties agree that the issue before this court is whether the operator has a duty to restore the surface. The issue is a matter of first impression in this State.

Some states have adopted reclamation statutes. For example, the Kansas statute requires an operator to remove all equipment, structures and obstacles placed upon the land and to grade the surface, so as to leave the land, as nearly as practicable, in the same condition as it was before the operation, unless the parties have entered into a contract providing otherwise. Kan. Gen. Stat. Ann. § 55-132a (Supp. 1961). The State of Arkansas has no such reclamation statute.

Only a limited number of courts have decided this issue, but the rule adopted by the majority of those that have decided it is that a lessee is under no implied duty to restore the surface of the land to the condition prior to commencement of the drilling. 1 H. Williams & C. Meyers, Oil and Gas Law § 218.12 (1985).

Commentators are divided in their writings. Davis, in "Selected Problems regarding Lessee's Rights and Obligations to the Surface Owner," 8 Rocky Mt. Min. L. Inst. 315, 374 (1963), writes:

> The conflicting positions taken by the courts in the cited cases have been both justified and condemned by legal writers. Williams and Meyers prefer the rule that refuses to imply the obligation. They reason:
>
> > It is well known that some surface damage inevitably results from oil and gas operations on the premises,

*e.g.*, from the building of roads and slush pits. The parties to the deed or lease severing minerals must be viewed as having this fact in mind. Their deed or lease contemplates reasonable surface user by the mineral owner or lessee. If a restriction on the surface easements of the latter is intended, it is reasonable to require that such intent be explicit in the instrument; otherwise the risk of injury resulting from reasonable surface user is properly upon the surface owner. If this view is adopted, the liability of a mineral owner or lessee to the surface owner by reason of change of conditions of the premises as a result of drilling and related operations should be limited to those cases involving negligence, willful misconduct, excessive user, breach of duty imposed by statute or valid regulatory order, or breach of an express contractual duty. 1 Oil and Gas Law 239-240 (1959).

Dean Sullivan, on the other hand, expresses a contrary view:

An analysis of the relationship of the parties and the underlying purpose of the lease would indicate that the lessee should be obligated to restore the surface, reasonable wear and tear excepted, even in the absence of an express provision to that effect. Sullivan, Oil and Gas Law 91 (1959).

Davis concludes by suggesting that it is the modern practice of prudent operators to clean up and restore the surface and he urges that:

The failure or refusal to do so would, in fact, constitute an unreasonable surface use that was not contemplated as being included in the rights granted to the lessee. Williams and Meyers argue that if the landowner wants to have his premises cleaned up after operations are completed, he should be required to spell out such requirement in the lease. I would put the shoe on the other foot and require the lessee to negate this obligation expressly or suffer the judicial implication of the duty.

Davis, "Selected Problems Regarding Lessee's Rights and Obligations to the Surface Owner," 8 Rocky Mt. Min. L. Inst. 315,

349 (1963).

Cole, in "Oil & Gas: Does the Oil and Gas Lessee Have a Duty to Restore the Surface?," 25 Okla. L. Rev. 572, 573 (1972) states: "Until recently most courts which had considered the question held that a duty to restore would not be implied. Legislative initiative and changes in the viewpoint of courts, however, have now established a definite trend toward placing the burden of restoration on the lessee."

■ We are persuaded that the current trend toward placing the burden of restoration on the lessee is the better view. This viewpoint recognizes a legitimate legal concern for the environment. In recognition of this concept, many responsible members of the oil industry have already voluntarily begun to clean up their abandoned sites, and we must base decisions upon current concepts of what is right and just. To hold otherwise would allow the lessee to continue to occupy the surface, without change, after the lease has ended. This would constitute an unreasonable surface use, and no rule is more firmly established in oil and gas law than the rule that the lessee is limited to a use of the surface which is reasonable. Accordingly, we hold that the duty to restore the surface, as nearly as practicable, to the same condition as it was before drilling is implied in the lease agreement.

Reversed and remanded for proceedings consistent with this opinion.

SMITH, PURTLE, and NEWBERN, JJ., dissent.

JOHN I. PURTLE, Justice, concurring in part and dissenting in part. I concur in that part of the majority opinion which holds that restoration is the responsibility of the lessee. However, it is a matter which is subject to contract. I would hold that the appellant in the present case purchased this property with knowledge of the existence of these structures and therefore waived the right to have the appellee remove them.

DAVID NEWBERN, Justice, dissenting. The appellant describes herself as an oil well operator who is very experienced in the oil business. She testified she had $400 per acre invested in the two acres which are the subject of this action. She acknowledged she is asking the appellee to spend over $10,000 to repair the two acres despite the payment of $1,700 to her predecessor in title for

damages to the land in question. Her position, apparently accepted by the appellee, is that she is not bound by the release given by her predecessor because she was unaware of it when she purchased the land.

The majority opinion cites no case holding that a lease of mineral rights carries an implied obligation of the lessee to restore the leasehold, as nearly as practicable, to the condition it was in before drilling. There may be one such case. In *Smith* v. *Schuster,* 66 So. 2d 430 (La. App. 1953), the court found such a duty. The basis of the duty was not discussed, and no authority for it was cited. That case was overruled by implication in *Rohner* v. *Austral Oil Exploration Co.,* 104 So. 2d 253 (La. App. 1958). In the latter case, the mineral lease expressly required the lessee to pay for damages to crops and timber. The court allowed damages for lost corn and watermelons but refused to go further, stating there was no duty beyond the duty not to be negligent in the use of the land. More recently the Louisiana Court of Appeals has found an implied duty to restore the surface, but it has been based on the Louisiana Mineral Code rather than the lease between the parties. *See Broussard* v. *Waterbury,* 346 So. 2d 1342 (La. App. 1977).

I agree with the scholarly articles cited in the majority opinion that there has been a trend to enact legislation imposing the duty to restore upon mineral lessees. Montana (Mont. Code Ann. § 82-10-501 to § 82-10-511 (1983); Illinois (Ill. Rev. Stat. Ch. 100½ § 26 (1983); Kansas (Kan. Stat. Ann. § 55-132(a) (1983); Oklahoma (Okla. Stats. Ann. tit. 52 § 318.2 to § 318.9 (West Supp. 1984-85); and South Dakota (S.D. Cent. Code § 38-11.1-01 to § 38-11.1-10 (1980 and Supp. 1983) have such statutes.

Before the enactment of its statute, Oklahoma allowed the lessor to recover under a nuisance theory, *Tenneco Oil Co.* v. *Allen,* 515 P.2d 1391 (Okla. 1973), or negligence theory, *Nichols* v. *Burk Royalty Co.,* 576 P.2d 317 (Okla. 1977), for surface damages, but I find no Oklahoma case imposing an implied restoration duty in a mineral lease. Likewise, in Kansas, prior to legislation, there was no implied duty. *Duvanel* v. *Sinclair Refining Co.,* 227 P.2d 88 (Kan. 1951); *McLeod* v. *Cities Service Gas Co.,* 131 F.Supp. 449 (D.C. Kan. 1955).

Other jurisdictions having no legislation covering the matter hold there is no implied duty upon the mineral lessee to restore the surface. *Warren Petroleum Corp.* v. *Monzingo,* 304 S.W.2d 362 (Texas 1957); *Amoco Production Co.* v. *Carter Farms,* 703 P.2d 894 (N.M. 1985).

I find no evidence whatever of the "changes in the viewpoint of courts." While I find some evidence of the legislative trend, I find the judicial one exists only in the hopes and dreams of the authors cited in the majority opinion. In my view we have no business making a blatant change in the law of mineral leases. Rather, I agree with the conclusion of the author of one article cited by the majority:

> The best solution to this problem seems to be the adoption of a statute, similar to the Kansas and Illinois statutes, requiring restoration of the premises upon completion of operations.

L. Davis, Selected Problems Regarding Lessee's Rights and Obligations to the Surface Owner, 8 Rocky Mtn. Min. L. Inst. at 349 (1963).

I respectfully dissent.

SMITH, J., joins in this dissent.